Maurice **MANIKOWSKE**, an **Incompetent Person**, by Clarence Bladow, his Guardian, Plaintiffs and Appellants,

v.

Thomas E. **MANIKOWSKE**, Martha Manikowske, Martha Manikowske as Executrix of the Estate of Alice Manikowske, Penny Manikowske, Bonny Manikowske, Thomas W. Manikowske, The Guardian Life Insurance Company, a corporation, and the New York Life Insurance Company, a corporation, Defendants and Respondents.

No. 8198.

Supreme Court of North Dakota.

June 29, 1965.

See also 136 N.W.2d 457.

Johnson, Milloy & Eckert, Wahpeton, for plaintiffs and appellants.

Lewis & Bullis, Wahpeton, for respondents Thomas E. Manikowske, Martha Manikowske, Martha Manikowske as Executrix of Estate of Alice Manikowske, Penny Manikowske, Bonny Manikowske, and Thomas W. Manikowske.

Cupler, Tenneson, Serkland & Lundberg, Fargo, for New York Life Ins. Co.

TEIGEN, Judge.

This appeal is from the judgment in an action tried to the court without a jury and the plaintiff, as appellant, has demanded trial de novo.

The plaintiff, Maurice Manikowske, through his guardian, Clarence Bladow, brought this action against his brother, Thomas E. Manikowske; his brother's wife, Martha Manikowske, individually and as executrix of the estate of Alice Manikowske; the children of Thomas E. and Martha Manikowske, namely, Penny Manikowske, Bonny Manikowske, and Thomas W. Manikowske. These parties will be referred to by their first names. Also named defendants in the action are The Guardian Life Insurance Company, a corporation, and the New York Life Insurance Company, a corporation.

The action was brought to recover certain bequests in the estate of Alice Manikowske, alleged to be in the possession of Thomas E., Martha, Penny, Bonny, and Thomas W. Manikowske, for insurance premiums paid and to reform certain insurance policies issued by the defendant insurers.

Alice Manikowske, the mother of Maurice and Thomas E., the mother-in-law of Martha, and the grandmother of Penny, Bonny, and Thomas W., died testate February 15, 1953. Martha was appointed executrix of the estate. The estate was probated in Richland County and final decree of distribution was entered October 6, 1953. It is the claim of the plaintiff, Maurice, that he became entitled to certain property but that he has not received all of the prop-

erty he was entitled to under the last will and testament of Alice Manikowske or the final decree of distribution entered in her estate. Plaintiff prays that all those to whom any property was distributed be declared constructive trustees for the benefit of the plaintiff. It is alleged that Maurice was mentally incompetent to manage his own affairs and that a confidential relationship existed between him and the defendants Thomas E. and Martha which imposed a duty of trust upon them and that such duty and trust have been breached. Included in such property are two insurance policies issued by the defendant insurance companies.

The complaint also contains allegations pertaining to the sale of some flax and a motor scooter, which matter has been disposed of in another case and will not be considered in this opinion. Three actions were brought by Maurice through his guardian and they were consolidated for the purposes of trial. Appeals to this court were taken in all three cases. The other two are reported as follows:

"In the matter of the Estate of Alice Manikowske, deceased.

"Clarence Bladow, guardian of the Estate of Maurice Manikowske, v. Thomas Manikowske, Martha Manikowske, and Martha Manikowske as executrix of the estate of Alice Manikowske." 136 N.W.2d 455. and

"Maurice Manikowske, an Incompetent Person, by Clarence Bladow, his Guardian, v. Thomas Manikowske." 136 N.W.2d 457.

Although each case involves the same principal parties, the subject matters differ.

The plaintiff alleges the last will and testament and codicil of Alice Manikowske, testatrix, was admitted to probate. The salient provisions of said will read as follows:

"THIRD: I hereby give, devise and bequeath to my son, Maurice Manikowske, a life estate in the following-described real estate situated in Richland County, North Dakota, to-wit:

Southwest Quarter (SW¼) of Section Seventeen (17), Township One Hundred Thirty-two (132), Range Forty-nine (49); and Southwest Quarter (SW¼) of Section Twenty-four (24), Township One Hundred Thirty-two (132), Range Fifty (50),

and that said Maurice Manikowske is to have the rents, profits and income therefrom so long as he may live, save and except as may be provided for in Paragraph Four hereof; and that after his death I hereby give, devise and bequeath said real estate to the children of Thomas and Martha Manikowske, who shall be living at the date of the death of Maurice Manikowske.

"FOURTH: I further order and direct that before the rents, profits and income from the above-described real estate shall be paid to my son Maurice Manikowske there shall be first taken from the crops grown thereon by my executrix the sum of $1500.00, which sum shall be placed in a separate fund and in case of an emergency used to pay taxes against said real estate which would not otherwise be paid by the crop proceeds, or to purchase seed for crops to be grown upon said real estate if the income from the real estate is not sufficient with which to purchase seed; but that said sum of $1500.00 is to be used only in case of an emergency and crop failure and when it becomes necessary to resort to such fund in order to pay taxes and to purchase seed.

"FIFTH: I further order and direct that my executrix take from my estate the sum of $1500.00, and that the said sum be placed in a fund; and in case my son Maurice Manikowske needs any

part of said fund for doctor, hospital or sickness bills that may be incurred, that it shall be used for that purpose, or so much thereof as is necessary in order to pay for such things.

"SIXTH: I have purchased and partially paid certain endowment maturity value life insurance policies which will pay to my son Maurice Manikowske certain specified amounts therein at his attaining a specific age; but that the full amount of the principals may not have been paid in full at the time of my death, and in such case I hereby order and direct that my executrix take from the corpus of my estate sufficient money so that said insurance policies may be paid up in full, and will guarantee my son Maurice Manikowske a specified monthly sum so long as he may live.

"SEVENTH: I give, devise and bequeath to the children of my son Thomas Manikowske and his wife, Martha Manikowske, $2,000.00 each, to be paid to them when they reach the age of 18 years. I desire that such money be used for the education of such children, but in case the children do not wish to use it for educational uses, it nevertheless be given to them upon their reaching the age of 18 years of age.

"EIGHTH: All of the rest, residue and remainder of my property, whether real or personal, segregated or mixed, and wherever situated I give, devise and bequeath to my son, Thomas Manikowske and his wife, Martha Manikowske, share and share alike."

The codicil is in the form of a letter which was addressed to the deceased's attorney, who was also the attorney for the testatrix in the probate of the estate. The letter appears to have been admitted as a codicil. It reads, in part, as follows:

"In the event of my death, I want taken from my estate enough money to purchase another insurance annuity for my son Maurice, whereby he will receive $20 a month long as he lives. This payment to begin at the age of 50 years.

"In my will you made last summer there is a provision made, whereby there is a partially paid policy for Maurice, in the event of my death this is to be paid in full. In all there will be two insurance annuities to be paid in full for Maurice. One there is a benefit payment of $40 per month for life. On this last mentioned policy there are 4 or 5 payments made. In all Maurice will eventually receive $60 per month for life from the two annuities. There are also other benefits mentioned in my will for Maurice.

\* \* \* \* \* \*

"If you think this letter is sufficient evidence that I want the above added to my will, I will call at your office soon as I get back. If this procedure is not what may be required handle it anyway you think best. I do want Maurice to have the benefit of the 2 above mentioned annuities."

The final decree of distribution entered by the county court October 6, 1953, and from which no appeal has been taken, decrees the corpus of the estate, in part, as follows:

"*To Bonny and Penny Manikowske,* the following described real estate situated in Richland County, North Dakota, towit:

The Southwest Quarter (SW¼) of Section Seventeen (17), Township 132, Range 49, and the Southwest Quarter (SW¼) of Section Twenty-four (24), Township 132, Range 50,

subject to the life estate of Maurice Manikowske therein and his rights to the rents, profits and income therefrom so long as he may live.

*"To Bonny Manikowske,* the sum of $2598.03 in patronage certificates.

*"To Penny Manikowske,* the sum of $2598.03 in patronage certificates.

*"To Maurice Manikowske,* the insurance policies referred to herein, a life estate in said real estate, a 1951 Mercury Sedan automobile, motor No. 51SL115509M, and the sum of $3,000.-00 to be placed in the fund for the benefit of said Maurice Manikowske in accordance with the paragraphs four and five of the will of the deceased, Alice Manikowske.

"All of the rest, residue and remainder of the above described real and personal property to *Thomas Manikowske and Martha Manikowske,* equally and share and share alike."

No receipts from the legatees and devisees have been filed in the office of the county court and Martha Manikowske has not been discharged as executrix.

The plaintiff alleges on information and belief that the annuity policy purchased by his mother provides for his ownership of the policy but such ownership has since been transferred to Martha. He also alleges that Martha, as executrix, failed to purchase the annuity policy required by the codicil; that another policy was purchased on the life of Thomas E. which names Maurice as beneficiary if he outlives Thomas and, if he does not outlive Thomas, Martha is named as beneficiary. In the event of both of their deaths, then Bonny, Penny, and Thomas W. are named as beneficiaries. He also alleges that, contrary to the provisions of the codicil, he was told it was his duty to pay the premiums upon the second policy and that, pursuant to such directions, he has paid the premiums in the amount of $4,800.00. It is also alleged that at all times mentioned in the complaint Maurice was mentally incompetent to manage his own property and business affairs and that the defendants Thomas E. and Martha had knowledge thereof but no

guardian was appointed to represent him during the probate of his mother's estate. It is alleged that a confidential relationship existed and that the defendants Thomas E. and Martha hold these various properties as constructive trustees for Maurice. Plaintiff also pleads that to permit the principal defendants to retain an interest in the said insurance policies would result in unjust enrichment. Plaintiff prays:

1. That Martha be declared a constructive trustee of the policy as provided in paragraph six of the will and that she be required to transfer said policy to the plaintiff;

2. That Martha and Thomas E. be declared constructive trustees of the property received under the residuary clause of the will and be required to transfer said property to the plaintiff for the purpose of purchasing the insurance policy provided for by the codicil or, in the alternative, that the said property be charged with a lien for the purchase of said policy;

3. That Thomas E., Martha, Penny, and Bonny be declared constructive trustees of the insurance policy purchased in lieu of the policy described in the codicil on which the premiums were paid by the plaintiff.

4. That the court determine the exact nature and interest of Bonny, Penny, and Thomas W. in both insurance policies;

5. That the court determine the nature of the interest of the plaintiff in said insurance policies; and

6. That the insurance policies issued by the defendant insurance companies be reformed so as to comply with the court's order when made.

The defendants Thomas E., Martha (individually and as executrix), Penny, Bonny, and Thomas W. have answered separately. They deny that Maurice is or was mentally incompetent to manage his own property and business affairs. They admit that no guardian was appointed to represent Maurice in probate of the estate, that the

last will and testament was admitted to probate and that Martha was appointed executrix. They specifically deny that Martha is now the executrix of said estate and that a confidential relationship existed between Martha, as executrix, and Maurice. They admit that Thomas E. and Martha are the brother and sister-in-law of Maurice and, as such, owed him the utmost good faith in their transactions with him. Thomas E. and Martha also admit that they were decreed all of the residue and remainder of the corpus of the estate to share and share alike. They allege they do not understand the allegation of the complaint pertaining to the transfer of ownership of the annuity policy purchased by the testatrix and place the plaintiff on his proof. They deny that Martha, as executrix, failed to purchase the insurance policy required by the terms of the codicil or that it was improper for the plaintiff to pay the premiums thereon. They also deny that the plaintiff is the beneficial owner thereof and that Thomas E. or Martha hold the policy as constructive trustees. They ask that the complaint be dismissed.

■ The defendants Thomas E. and Martha Manikowske counterclaimed for various sums claimed to be due from Maurice. The various amounts alleged total $7,498.14 but no evidence was received in proof of the defendants' counterclaim and, for this reason, it was denied by the trial court. We affirm the dismissal of the counterclaim.

The Guardian Life Insurance Company has not answered. The New York Life Insurance Company answered by separate answer admitting that, upon the application of the defendant Thomas E., it issued its policy on the life of Thomas E. Manikowske in the face amount of $6,093 and that said policy was fully paid up in March 1962 when the tenth premium was paid but that the New York Life Insurance Company had no knowledge of the identity of the person who paid the premiums as no such records are kept. It also alleges it has no knowledge

or information relative to the terms and provisions of the will or codicil of Alice Manikowske, deceased, and prays that if the court by order, decree, or judgment shall require reformation of the policy, the proposed order be submitted to them before entry with leave to submit to the court proposed changes in the same consistent with the requirements imposed upon it by law and its mode and practice in changing the provisions of existing policies.

The trial court found that the last will and testament and codicil of Alice Manikowske, deceased, were admitted to probate in the county court; that the said estate was probated and final decree of distribution entered October 6, 1953; that the executrix, Martha, tried her very best to carry out the wishes of the testatrix as far as possible and, to do so, found it necessary to expend the sum of $5,402.36 out of her and her husband's personal funds to prepay the balance of premiums on the annuity policy purchased by the deceased and to pay the initial cost of the purchase of the second policy of insurance, and it was the understanding that Maurice would make the rest of the premium payments on the policy purchased during the probate. The trial court also found that Maurice has a speech defect, a below normal mental capacity, and is mentally retarded, but that he was not then and is not now mentally incompetent to handle his own affairs. It also found that Maurice is the beneficial owner of the annuity policy described in paragraph six of the deceased's will and is entitled to the ownership and possession thereof. It ordered Martha to transfer legal title thereof to Maurice.

The court found, as to the second policy purchased on the life of Thomas E. from the New York Life Insurance Company, that Maurice had assumed and paid the annual premiums thereon and, therefore, must be considered the legal owner of said policy; that although Maurice had assigned the ownership of said policy to Thomas E., such assignment was without consideration and Maurice is entitled to have the legal

ownership transferred to him. It found that Maurice must have consented to this arrangement because he continued payment of the premiums and therefore he could not recover, that the policy was submitted to the probate court with the final report and accounting and it was approved by the probate court in its final decree of distribution. No appeal was taken. The court found the letter was not in fact a codicil (although it treated it as a codicil) but that it was only an expression of the desire of the testatrix and that final determination was left to her lawyer to do as he decided best. It is the tenor of the court's opinion that the executrix did the best she could under the circumstances.

The trial court found that the fund of $1500, established by the fifth paragraph of the will for medical and hospital expenses, was in the nature of a trust fund. It also found that the fund to be established under the fourth paragraph of the will from rents, profits, and income of the land required the cooperation of Maurice and if not established it would not affect the estate of Alice Manikowske and that, in any event, Maurice would not be injured by a failure to set up this fund as long as he had the ability to pay the taxes and to buy seed. It, therefore, ordered that Martha be declared a trustee of the $1500 fund for medical expenses and that she place the same under the supervision and control of the district court. The court directed her to proceed with a request for supervision of the trust and to render an accounting and held that, as to the other fund, any balance remaining in her hands be transferred to Maurice's guardian, Clarence Bladow. The trial court made no finding as to amount.

The court found the evidence does not establish that Martha, as executrix or as trustee, has misused any property or funds belonging to Maurice, and that no property has been decreed or received by other devisees or legatees, named as defendants, to which Maurice is entitled or in which he has an interest.

The insurance policies were received as exhibits in this case. The policy of the defendant The Guardian Life Insurance Company, described in paragraph six of the will, was issued September 28, 1949. It is a paid-up policy. It insures the life of Maurice and the annual premiums were paid by the mother while she lived and the balance was paid by Martha and Thomas E. personally. It is an endowment benefit policy providing for a monthly life income of $40 commencing June 28, 1975, at which time Maurice will be 55 years of age. Attached to the said policy is a request for change of owner dated April 30, 1953, which is dated after the mother's death. It was also approved by the company. The ownership of the policy was changed from Maurice to "Martha Marie Manikowske," who is one and the same person as Martha Manikowske in this action. The policy provides the rights and powers of the owner as follows:

"Rights of Owner. Except as may be otherwise provided in this policy, the Owner, during the lifetime of the Insured and without the consent of any beneficiary, may assign this policy, may change, reduce, cancel or amend this policy by agreement with the Company, and may receive every benefit, exercise every option and right and enjoy every privilege conferred by this policy or allowed by the Company.

"Any benefit payable at the death of the Insured shall be paid to the designated beneficiary and not to the Owner, unless otherwise provided."

The beneficiaries have remained the same. The beneficiary in the case of death of the insured was his mother, Alice Manikowske, if living, and the secondary beneficiaries are Penny and Bonny.

The other policy, requested by the letter admitted as a codicil, is issued by the defendant New York Life Insurance Company. It is dated March 26, 1953, and is issued upon the life of Thomas E. in the face amount of $6,093. It provides for ten

annual premiums of $400 each. It is a ten payment life policy. It provides the insurance is payable upon death of the insured. The primary beneficiary is Maurice, if living, and the secondary beneficiaries are Martha or, in the event of her prior death, Penny, Bonny, and Thomas W. A settlement agreement endorsement attached to the policy, dated March 15, 1954, provides that if the insured, Thomas E., should die during the lifetime of Maurice and before December 29, 1969, the proceeds shall be held by the company as provided under option four and that if, on December 29, 1969, the beneficiary Maurice is still living, payments shall be made to him under option three which provides for monthly installment payments for twenty years certain or for life. Maurice was born on December 29, 1919. On December 29, 1969, he will be fifty years of age. In accordance with the table of monthly installments, per one thousand dollars of proceeds payable under option three, the monthly installment payable for life with a fixed period of twenty years at age fifty of the beneficiary is $3.92 or, in accordance with our calculations, about $23.88 per month. It appears Maurice has paid seven of the annual premiums on this policy of $400 each, or $2,800. The last premium was paid by Thomas E. and he asked that the same be allowed as a charge against Maurice in the claim and delivery and accounting action referred to above, but in which action it was disallowed as not being a proper subject matter for decision in that case.

The above-described policies were submitted to the county court with the final report and accounting and petition for distribution and were decreed to Maurice.

■ To properly analyze the character of the property and determine the jurisdiction of the trial court in this case, it appears we must first determine the effect of the final decree of distribution entered by the county court in the estate of Alice Manikowske, deceased, upon the property. This is necessary because the final decree of distribution of a decedent's estate made by the county court is of the same rank as a judgment entered by a court of record. See Section 27–07–39, N.D.C.C., and cases cited as a footnote thereto. That statute provides the proceedings of a county court shall be construed in the same manner and with like intendments as proceedings of courts of general jurisdiction and that its records, orders, and decrees shall be accorded like force, effect, and legal presumptions as are records, orders, judgments, and decrees of courts of general jurisdiction, providing it has jurisdiction of the subject matter and is within the authority of the court. In re Anderson's Estate, 76 N.D. 163, 34 N.W.2d 413.

The final decree of distribution purports to decree to Maurice "the insurance policies referred to herein." The insurance policies are not described in the final decree of distribution nor are they described in the inventory of the assets of the estate. They are referred to in the final report and account in which the executrix reports to the court as follows:

> "That in accordance with the terms of the will of the deceased, the endowment maturity value life insurance policy payable to Maurice Manikowske has been paid up in full, guaranteeing a monthly payment to Maurice Manikowske on obtaining the age of ———— years. In addition, a further policy has been obtained for the benefit of Maurice Manikowske in accordance with the letter of April 5, 1952, of Alice Manikowske; and said policies are submitted to the Court for approval."

■ The county court had no jurisdiction of the annuity policy purchased by the mother. It was issued in the name of Maurice Manikowske, as insured and owner, and paragraph six of the will merely authorizes the executrix to take from the corpus of the estate sufficient money to pay this policy in full. This policy was the property of Maurice before her death and

remained his property after her death. It never became the property of the estate and the county court had no jurisdiction thereof. It had jurisdiction to allow an expenditure to pay the balance of the premiums in full.

The second insurance policy was purchased from the New York Life Insurance Company upon the life of Thomas E. Manikowske following the decedent's death and during the probate of her estate. The initial premium of $400 was paid by the executrix out of her and her husband's personal funds. They paid the second annual premium on this policy in 1954 after the final decree was entered.

The final report and account shows a deficit balance of $6,643.36. This includes special bequests of $3,500 as expenditures and leaves a net deficit of $3,143.36. However, insurance premium payments are not listed as expenditures in the report. The estate was short of cash and there apparently was no desire on the part of the executrix to sell real or personal property belonging to the estate. The estate inventoried at more than $55,000 and money could easily have been obtained by the sale of some of the property belonging to the estate and distribution still could have been made in accordance with the last will and testament. Thomas E. and Martha, as residuary legatees and devisees, apparently preferred to personally advance money for the payment of these various expenses and pay the insurance premiums from their own funds rather than to reduce the amount of the residue which they would receive under the will as residuary legatees and devisees.

The deceased's letter to her attorney, attached to the last will and testament of the deceased in the probate file, if construed as a codicil to the will, in no way requires that the insurance annuity it directs be purchased shall become the property of the estate. It is a direction to the executrix to purchase a single premium insurance annuity for Maurice that will pay him $20 per month for life beginning at age fifty at the expense of the estate. The letter is well written; it is explicit and clear. The deceased has stated with clarity and detail her wishes and leaves to her attorney judgment as to the procedure to follow to make her expressed desires effective. We cannot agree with the district court that the letter "left the final determination up to her lawyer to do as he decided best" because it "can only be considered as an expression of her desire." It was either admitted to probate as a codicil to the last will and testament of the deceased or it has no validity or effectiveness whatsoever.

Sections 1-01-49, 30-01-02, and 56-02-02, N.D.C.C., all provide that the term "will," as used in our laws, includes "codicil."

Section 56-03-04, N.D.C.C., provides:

"Holographic will.—A holographic will is one that is entirely written, dated, and signed by the hand of the testator himself. It is subject to no other form and may be made in or out of this state and need not be witnessed."

The letter on its face meets all of the requirements of this statute. It is contained in the probate file of the county court and is attached to the last will and testament filed in the County Court of Richland County on March 12, 1953, where it was recorded according to the certification contained on the attached cover. No one disputed its execution and the two instruments appear to have been admitted as the republished will of the testatrix. The execution of a codicil has the effect of republishing the will as modified. Section 56-03-05, N.D.C.C.

The parties to the probate proceedings and the county court in its final decree of distribution have treated the letter as a codicil. If the letter was not admitted as a codicil to the will, there was no object in reporting the purchase of the second insurance policy in the final report and account. This is particularly true where the report did not itemize premium payments

or ask approval of the expenditure by the county court. The only possible purpose of referring to it was to show compliance with the republished will and to ask the county court's approval of the action taken as being in compliance with the mandate of the republished will. The county court by its final decree of distribution approved the transactions of the executrix.

■ In view of the factual situation and a study of the proceedings in county court, the only logical conclusion we can draw is that the letter written by the testatrix to her attorney was attached to her will as a codicil and both instruments were presented to the county court as her republished will and admitted by the court as such. Both parties to this proceeding treat the letter as a codicil in this case and the district court in its findings of fact found it was admitted as a codicil. For these reasons we find the trial court erred when it interpreted the codicil. This was a question that had been determined by the county court and was not open to collateral attack in the district court.

■■ Under the provisions of Section 111 of the Constitution, the county court is vested with exclusive jurisdiction in probate and testamentary matters. In the absence of an appeal or contest within the statutory time, an order of the county court admitting a will to probate becomes final, conclusive, and immune to collateral attack. It is of equal rank with a judgment entered by other courts of record in this State. Section 27–07–39, N.D.C.C.; Joy v. Elton, 9 N.D. 428, 83 N.W. 875; Sjoli v. Hogenson, 19 N.D. 82, 122 N.W. 1008; Stenson v. H. S. Halvorson Co., 28 N.D. 151, 147 N.W. 800; Fischer v. Dolwig, 29 N.D. 561, 151 N.W. 431; Reichert v. Reichert, 41 N.D. 253, 170 N.W. 621; Knight v. Harrison, 43 N.D. 76, 174 N.W. 632; Bellingham State Bank v. McCormick, 55 N.D. 700, 215 N.W. 152.

■ If the county court made a mistake in a matter over which it had exclusive jurisdiction and no appeal was taken, its decision has become final. The mistake cannot be corrected in a collateral action in the district court.

The county court made no adjudication relative to future payments of the premiums on this policy. It approved the final report and account of the executrix. It stated, in reference to this policy, as follows:

"In addition, a further policy has been obtained for the benefit of Maurice Manikowske in accordance with the letter of April 5, 1952, of Alice Manikowske; said policies are submitted to the Court for approval."

Thereafter the county court entered an order allowing the final report and account in all respects as the same was rendered and presented for settlement. It is clear the county court approved the final report and account in the light of the codicil which states:

"I want taken from my estate enough money to purchase another insurance annuity for my son Maurice whereby he will receive $20 a month as long as he lives. This payment to begin at the age of 50 years."

■ The final report and account also incorporated the policy by reference. It is clear the policy does not comply with the directive of the republished will. It is not an annuity for Maurice beginning at age fifty. The county court made a mistake when it approved the report and the policy but this cannot be corrected in this action as it is collateral. The county court approved the policy as being in compliance with the republished will but there is nothing to indicate the county court approved a future plan whereby Maurice should pay the premiums. The records of the county court do not disclose the source of the money used to pay premiums on either policy. The final report and account is incomplete in this respect but we believe the county court assumed from the

general language used in the report that the premiums had been paid in full.

The evidence in this case discloses Martha made the first two premium payments on the policy purchased on the life of Thomas E. The policy was issued March 26, 1953. Its anniversary and premium payment date was established as March 26. The third premium became due March 26, 1955. The final decree of distribution in the mother's estate was entered October 6, 1953. The time for appeal from the final decree of distribution had passed before Maurice made the first premium payment. The testimony establishes he was told by Martha and Thomas E. that it was his obligation to pay the premiums and it was because of the direction of Martha and Thomas E. that he paid seven annual premiums. However, before the tenth or last premium became due, he refused to pay and it was paid by Thomas E. and Martha from their funds. Maurice testified he believed Thomas E. and Martha when they told him it was his obligation to pay the premiums but when he learned of the codicil and that the premiums should have been paid from the estate, he refused to pay the last premium.

During all of this time he lived in the home of Thomas E. and Martha and the evidence establishes that they directed his business affairs. We have here a family relationship of brothers and brother-in-law and sister-in-law. It is admitted by these defendants that Maurice is and was during all of this period mentally retarded. He advanced academically to about the third grade. As a youth he attended a special school for retarded children which he attended for seven years. An instructor from the school testified that Maurice had an I.Q. of 68 when he entered the school and 72 when he left. She also testified that he had reached his ultimate capacity to learn and they recommended he attend a trade school because he was handy with his hands. He then attended the State School of Science at Wahpeton. The evidence establishes he is gullible and that he

has limited ability to read, write, or understand figures. Thomas E. and Martha supervised his business affairs. They are intellectually superior to Maurice. Thomas E. has over three years of college education and he testified he considers himself to be the principal one to take care of Maurice.

When Maurice got married, Martha, with Thomas E. acquiescing, petitioned the county court to have herself appointed as guardian of his estate. She testified that as long as she and her husband guided Maurice, he did not need a guardian but that conditions changed when Maurice found a girl friend and later was married. It appears his new in-laws entered the picture. There was a meeting between Martha and Maurice's mother-in-law. She asked that Maurice's property be turned over to Maurice and Martha testified she felt, under those circumstances, he was incompetent to manage his own affairs.

It is clear from the evidence that a confidential or fiduciary relationship existed between Maurice and his brother, Thomas E., and sister-in-law, Martha. This relationship has continued to exist from the time of the death of the mother in 1953. The codicil clearly directs that there should be purchased from the assets of the estate an annuity for the benefit of Maurice. This was not done but the county court approved another policy as being in compliance with the testatrix's will. It was the ten pay life policy purchased from the New York Life Insurance Company on the life of Thomas E. It names Maurice as primary beneficiary. Thomas E. and Martha were the residuary legatees and devisees in the mother's estate. Had the annuity been purchased as directed, it would have reduced the amount of the residue for distribution to them. The appraised value of the residue decreed to them was in excess of $34,000. If Thomas E. outlives Maurice, Martha succeeds as beneficiary under the policy with their children, named as defendants herein, as beneficiaries to succeed Martha. Therefore, in addition to

freeing themselves of the obligation for the payment of premiums, they may also benefit. They, or some of them, may receive the insurance as beneficiaries.

 Thomas E. and Martha had possession of the policy. Maurice paid seven premiums, for a total of $2,800, on the gamble that he will outlive his brother who is two years younger than he. He or his estate may never benefit from this policy. The record clearly establishes Maurice had confidence in and relied on the direction he received from Thomas E. and Martha to the effect that it was his obligation to pay the premiums on the policy. He did this each year until the last premium was due in March of 1962. By that time he had met and become interested in his present wife. This association brought about an inquiry into his affairs by other interested persons and the result was that Maurice refused to pay the last premium. It also brought about these actions. It is admitted that Maurice's mind is weak and this is clearly shown by the record. Maurice was not told to pay these premiums on the policy until after the final decree of distribution had become final in his mother's estate. The county court was not advised of any such plan and did not pass on the question. Thomas E. and Martha paid the balance of the premiums on The Guardian Life Insurance Company annuity policy purchased by the mother from their own funds. They also paid the first two premiums on the second policy which was purchased from the New York Life Insurance Company. The procedure followed would indicate to an observer that it was their intention to pay the balance of the premiums as they came due on the policy and, under the circumstances, taking into consideration the republished will, it was clearly their obligation to do so.

 In addition to a confidential relationship, we find that Thomas E. and Martha exercised undue influence over Maurice. Section 9–03–11, N.D.C.C., provides:

" 'Undue influence' defined.—Undue influence consists:

1. In the use, by one in whom a confidence is reposed by another or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him;

2. In taking an unfair advantage of another's weakness of mind; or

3. In taking a grossly oppressive and unfair advantage of another's necessities or distress."

A gross injustice has been imposed on Maurice. An unjust enrichment may result to the benefit of Martha or her children, Penny, Bonny, and Thomas W. We cannot in good conscience permit this condition to continue. We find that Thomas E. and Martha took an unfair advantage of Maurice's weakness of mind.

 The trial court found that Maurice must have consented to this arrangement since he continued to make payment of the premiums. However, it is clear he did so only because he was told it was his obligation to do so by Thomas E. and Martha. We find he did so because they exercised undue influence over him and, therefore, his consent was not free, Section 9–03–03, N.D.C.C., and is voidable, Section 9–03–04, N.D.C.C. Consent obtained by undue influence, or by taking advantage of one's weakness of mind, is not free. Shellburg v. Wilton Bank of Wilton, 39 N.D. 530, 167 N.W. 721.

 It has been established by the evidence that a fiduciary or confidential relationship existed between Thomas E. and Martha on the one hand and Maurice on the other. Thomas E. and Martha abused this confidence when they told Maurice it was his obligation to pay the remaining eight premiums on the New York Life Insurance policy. It resulted in an unjust enrichment to them. They relieved themselves of an obligation which was theirs.

The beneficiary provisions of the policy carry with it a strong possibility of greater unjust enrichment to Martha or her children because, in all probability, Thomas E. will outlive Maurice. Thus, Thomas E. and Martha have gained relief from an obligation to make premium payments in the amount of $2,800 over the seven-year period as a result of a violation of a trust placed in them by Maurice. They may also benefit by receiving the proceeds of the policy. Maurice believed them when they told him it was his obligation to pay. The direction to Maurice to pay these premiums constitutes undue influence as defined by Section 9-03-11, N.D.C.C., supra. They took an unfair advantage of Maurice's weakness of mind. The advantage gained is unconscionable and suffices to ground equitable relief in the form of a declaration of an implied or constructive trust. An implied trust may be either a resulting trust based on the implied intention of the parties or a constructive trust imposed by a court of equity to prevent unjust enrichment. Bodding v. Herman, 76 N.D. 324, 35 N.W. 2d 561; Shong v. Farmers' & Merchants' State Bank, N.D., 70 N.W.2d 907; Van Sickle v. Olsen, N.D., 92 N.W.2d 777. An implied trust is one created by operation of law. Section 59-01-05, N.D.C.C. It arises where one gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act. He becomes an implied trustee of the thing gained for the benefit of the person who would otherwise have had it, unless he can prove he has some other or better right thereto. Section 59-01-06, N.D.C.C. Thomas E. and Martha have voluntarily assumed a relation of personal confidence with Maurice and are, therefore, deemed trustees. Section 59-01-08, N.D.C.C. As such, they are bound to act in the highest good faith toward Maurice and were prohibited from obtaining any advantage over him by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind. Section 59-01-09, N.D.C.C. Nor should they use the influence which their position gave them to obtain any advantage over Maurice. Section 59-01-12, N.D.C.C. All transactions between them and Maurice during this period by which they obtained any advantage from him are presumed to be entered into without sufficient consideration and under undue influence. Section 59-01-16, N.D.C.C. They are liable to make good whatever is lost by their error. Section 59-01-18, N.D.C.C.

For the reasons aforesaid, we affirm the trial court's judgment that the ownership and possession of the policy of insurance with the New York Life Insurance Company be transferred to Maurice and direct that judgment be entered in favor of Maurice and against the defendants Thomas E. and Martha for the sum of $2,800 as a recovery of premiums erroneously paid, plus interest at the rate of 4% per annum from the respective dates of payment. The error of the county court in approving the policy as being in conformity with the republished will cannot be corrected in this action.

In respect to the two funds provided for under paragraphs four and five of the last will and testament, the final report and account states:

"That $1500.00 has been set aside for medical expenses for Maurice Manikowske, and that $1500.00 will be taken from the crops for the benefit of Maurice Manikowske."

It prays that the court enter an order distributing the estate remaining in the hands of the executrix insofar as said funds are concerned in the following words:

"the sum of $3,000.00 to be placed in the fund for the benefit of said Maurice Manikowske in accordance with paragraphs four and five of the will of the deceased, Alice Manikowske."

The final report and account and the final decree of distribution each described the residue of said estate available for distribution. Neither of these instruments showed any cash on hand from which cash bequests

could be paid. The final report and account shows a deficit as explained earlier in this opinion. The final decree of distribution decrees:

"That all and singular of the above described real and personal property be and the same is hereby assigned to and vested in said * * * Maurice Manikowske * * * forever in the following proportions, to wit: * * * the sum of $3,000.00 to be placed in the fund for the benefit of said Maurice Manikowske in accordance with the paragraphs four and five of the will of the deceased, Alice Manikowske."

From the testimony introduced in this case, it appears that the funds were handled in the same manner as the payment of the insurance premiums described above, that is, they were paid from the personal funds of Thomas E. and Martha. It also appears that during the period following the entry of the final decree of distribution, a checking account had been maintained in the name of Maurice Manikowske and Martha Manikowske and that deposits have been made to this account from the earnings of the land in which Maurice received a life estate. Periodic withdrawals were made from this checking account for various purposes. Several payments had been made to Thomas E. Manikowske apparently in settlement of business affairs between Maurice and Thomas E. It appears this account was kept at the Citizens Bank. There is nothing in the record that indicates this account represents the fund directed by paragraph four of the will. It appears to have been Maurice's private checking account and that he authorized Martha to draw checks on this account. However, according to Martha's testimony, she only drew on this account jointly with Maurice and they both signed the checks.

The record discloses there is another bank account in the form of a savings account in the amount of $1,500 deposited in the First National Bank, which bank later changed its name and is now known as the Wahpeton National Bank. Martha testified the deposit is in her name as executrix and in Maurice's name. It does not appear that there have been any withdrawals from this account. In other words, it is our view of the evidence that a savings account deposited in the name of Martha Manikowske, as executrix of the estate of Alice Manikowske, and Maurice Manikowske was set up and is still maintained in the Wahpeton National Bank. This represents the fund directed by the fifth paragraph of the will to be used to pay expenses of illness for Maurice. The executrix did not comply with the fourth paragraph of the will. She did not take from the crops grown on the land during the process of probate of the estate of Alice Manikowske, the sum of $1,500 to be placed in a separate fund to be used in case of emergency to pay taxes or purchase seed.

No bank records of any kind were introduced in evidence, although it appears that, upon demand, Thomas E. and Martha had turned over to Maurice's guardian and his attorney bank statements and cancelled checks of Maurice's bank account for examination. No accounting of this fund was introduced in evidence and we, as was the trial court, are without knowledge as to the nature of these transactions, except for the general testimony of Martha that she paid many bills from this account, a number of them to her husband, Thomas E. Her testimony is very vague as to the exact nature of the financial transactions in which she was involved with Maurice but she did testify that, in 1957, she participated in withdrawing all of the funds from Maurice's checking account and paid it to herself and her husband, Thomas E. This payment was indicated to be in settlement of Maurice's indebtedness to them. There is no evidence that the fourth paragraph of the will has been complied with in any way as we view it.

The plaintiff has the burden of proof and we find that he has failed in this

burden as to the $1,500 fund to be established under paragraph four of the will; however, he has sustained the burden as to the $1,500 fund to be established under paragraph five of the will to be used in case of illness for Maurice and we affirm the district court's findings that this is a trust fund and should be under the supervision and control of the district court. We, therefore, agree with the direction of the district court that the defendant Martha Manikowske proceed forthwith with the necessary proceedings in the district court for supervision in accordance with the statutes. Relative to the fund provided by paragraph four of the will to be collected from income, we are unable to determine from the record whether such fund was established or whether such fund exists. Martha, as executrix of the estate, was empowered by the will to collect from the earnings of the land under her jurisdiction proceeds from the profits of the land to establish the fund. To do so would not have required the cooperation of Maurice as indicated by the district court in its findings. It is indicated in the final report and account and in the final decree of distribution that such moneys had not been accumulated during probate. The final report and account states that "$1500 will be taken from the crops for the benefit of Maurice Manikowske." The final decree states the sum is "to be placed in the fund" in accordance with paragraph four of the will. This, in our opinion, amounts to a direction by the county court to the executrix to perform an act after the final decree of distribution was entered which the executrix could not enforce. A life estate in the land was decreed to Maurice and, after the entry of the final decree of distribution, the executrix, as the legal representative of the estate, had no power to collect rents and profits therefrom. If the arrangement worked out by Martha and Maurice relative to Maurice's private checking account is correctly judged herein, it is not a subject matter properly before the court in this action, nor was the issue presented for

determination. If a dispute exists as to these transactions, it may be a proper subject matter for a separate action for an accounting.

For the reasons set forth in this opinion, we direct that the judgment of the district court be modified to provide as follows:

1. That the plaintiff be declared the legal owner of the following described insurance policies: New York Life Insurance Company, insurance policy #22–528–746, and The Guardian Life Insurance Company, insurance policy #870936; and that the defendants Thomas E. Manikowske and Martha Manikowske be ordered to transfer legal ownership of said policies to the plaintiff;

2. That the plaintiff have judgment against the defendants Thomas E. Manikowske and Martha Manikowske in the amount of $2,800, plus interest at the rate of 4% per annum, computed on the seven annual life insurance premium payments of $400 each, commencing March 26, 1955;

3. That possession of the insurance policies described in paragraph numbered one hereof be placed with the plaintiff and that the clerk of court is ordered to deliver said policies to Clarence Bladow as guardian for said Maurice Manikowske;

4. That the defendants The Guardian Life Insurance Company and the New York Life Insurance Company be ordered and directed to change legal ownership of their respective insurance policies described in paragraph numbered one to provide ownership in Maurice Manikowske, showing Clarence Bladow as guardian of the said Maurice Manikowske;

5. That the savings account in the Wahpeton National Bank in the joint names of Maurice Manikowske and Martha Manikowske be declared trust property with Martha Manikowske as trustee and Maurice Manikowske as beneficiary, and that the said Martha Manikowske as trustee shall proceed forthwith to obtain super-

vision of said trust account by the district court in accordance with the statutes in such case made and provided; and

6. That the counterclaim of the defendants Thomas E. Manikowske and Martha Manikowske be dismissed with prejudice.

As so modified, we direct the judgment to be affirmed with costs of trial and costs on appeal allowed in favor of the plaintiffs.

BURKE, C. J., and ERICKSTAD, J., concur.

STRUTZ, J., did not participate.

KNUDSON, J., not being a member of the court at the time of submission of this case, did not participate.