Glen A. STURDEVANT, Plaintiff
and Appellee,

v.

SAE WAREHOUSE, INC., a North Dakota
Corporation, Richard Sturdevant, James
Sturdevant, Terry Sturdevant, Individu-
ally and as Executors of the Estate of
Virgil Sturdevant, Deceased, and Trus-
tees of the "Lucylle Trust" and "Residu-
ary Trust" of the Virgil Sturdevant Es-
tate, Defendants and Appellants.

Glen A. STURDEVANT, Plaintiff
and Appellee,

v.

Richard STURDEVANT, James Sturde-
vant, Terry Sturdevant, Individually and
as Executors of the Estate of Virgil
Sturdevant, Deceased, and Trustees of
the "Lucylle Trust" and "Residuary
Trust" of the Virgil Sturdevant Estate,
Defendants and Appellants.

Glen A. STURDEVANT, Plaintiff
and Appellee,

v.

STURDEVANT's AUTO PARTS, INC. of
Oakes, a North Dakota Corporation,
Richard Sturdevant, James Sturdevant,
and Terry Sturdevant, Individually and
as Executors of the Estate of Virgil
Sturdevant, Deceased, and Trustees of
the "Lucylle Trust" and "Residuary
Trust" of the Virgil Sturdevant Estate,
Defendants and Appellants.

Glen A. STURDEVANT, Plaintiff
and Appellee,

v.

Lucylle STURDEVANT, Intervening
Defendant.

Glen A. STURDEVANT, Plaintiff
and Appellee,

v.

Robert STURDEVANT, Intervening
Defendant.

Civ. No. 9432.

Supreme Court of North Dakota.

Sept. 29, 1978.

Rehearing Denied Oct. 31, 1978.

Waldron, Kenner, Halvorson & Sturdevant, Minot, for plaintiff and appellee; argued by Michael G. Sturdevant, Minot.

Johnson, Milloy, Johnson, Stokes & Robinson, Ltd., Wahpeton, for defendants and appellants; argued by Rauleigh D. Robinson, Wahpeton.

ERICKSTAD, Chief Justice.

James and Terry Sturdevant, executors of the last will and testament, and trustees of certain trusts of their deceased father, Virgil Sturdevant, appeal from a judgment entered in district court in which their uncle, Glen Sturdevant, was granted the right, *inter alia,* to purchase shares of stock in numerous Sturdevant businesses from the Lucylle and Residuary Trusts that were established by Virgil's last will and testament. We affirm the judgment.

In 1946, Virgil and Glen assumed control of the family automobile repair business that had been started by their parents. They expanded from a garage to an operation consisting of the garage, a warehouse, a building company, a number of wholesale parts stores, and a Kentucky Fried Chicken franchise. During the course of this expansion, a number of Virgil's children became involved in the businesses.

On January 17, 1970, Virgil died and his will was admitted to probate shortly thereafter. The will provided, among other things, for the establishment of two trusts, *i. e.* the Lucylle Trust, in which Virgil's wife, Lucylle, is the sole beneficiary, and the Residuary Trust, in which Lucylle and the children of Lucylle and Virgil are beneficiaries. Generally, the Lucylle and Residuary Trusts consist of stock in the various Sturdevant companies. Three of Virgil's sons, Richard, James, and Terry were appointed as executors and trustees.[1]

The administration of Virgil's estate was complicated by a clause in the will that reads:

"TENTH: It is my intention and wish and directive to the Trustees of the trusts hereinabove created, that insofar as possible, they carry out the following objectives with reference to the handling and

1. The testator appointed Richard and James Sturdevant as co-executors and co-trustees in his will dated November 3, 1967. Terry Sturdevant was appointed to serve with Richard and James by codicil dated January 7, 1970. Richard, however, left the Sturdevant businesses and terminated any active involvement in Virgil's estate before these actions were brought in district court. Richard was not a party in the district court proceedings and is not involved in this appeal.

management of the family businesses in which I have an interest relating to the auto parts and related lines:

"A. That it be kept intact as long as possible.

"B. That my brother, Glen, and my sons, Richard and James shall have the right to buy additional interests in the family business to the fullest extent of their ability. I specifically grant this right to my sons, Richard and James, notwithstanding that they are co-trustees.

"C. That any other of my children who demonstrate an interest in becoming active in the family business shall also have the right to buy in, subject to the approval of my brother, Glen, and my co-trustees, and in case of any dispute, or disagreement, the co-trustees shall be the sole judges and final arbiters in such dispute.

"D. For the purpose of carrying out this directive, I would urge that when a distributive share is about to be made under the terms of the Residuary Trust, if at all possible such distributive share be made in cash, retaining insofar as possible, the family business intact."

In August, 1971, Richard, James, and Terry purchased all of Virgil's stock in SAE Warehouse, Inc., from the estate. This purchase was allegedly made with Glen's consent and pursuant to a stock purchase agreement. In February, 1972, Glen discovered that he was named in his brother's will and that he might have some interest in the estate. He thereafter attempted to purchase shares of stock in the various Sturdevant businesses from his nephews pursuant to subsection B. of the tenth part of the will, but was unsuccessful. The nephews refused to sell, contending that the relevant parts of the will were not mandatory, and that any sale of stock in the Sturdevant businesses was within their discretion. A Final Decree of Distribution was entered and the executors were discharged on September 3, 1975. Glen was not served with a notice of the petition for the proof and probate of the will, nor was he served with notice of any other phase of the probate proceedings.

In January, 1976, Glen initiated lawsuits in which he sought to force the nephew-executor-trustees to return to the Residuary Trust the stock that they had purchased and to allow him to purchase stock in the various Sturdevant businesses pursuant to the will and certain stock purchase agreements.[2] Lucylle Sturdevant, the widow of Virgil, and Robert Sturdevant, a son and recipient of a residuary interest in Virgil's will, intervened in the lawsuit and also opposed the purchase.

The actions were consolidated and a trial was held on April 25 and 26, 1977. By judgment issued October 26, 1977, Glen was declared to have the right to purchase stock in the Sturdevant companies from the Lucylle and Residuary Trusts by virtue of the Tenth Clause of the decedent's will, and the trustees were ordered to convey to the Residuary Trust all of the stock in SAE Ware-

---

2. Glen initially brought four lawsuits: Case Nos. 9047, 9048, 9049, and 9050.

Case No. 9047 is an action for specific performance and was brought against SAE Warehouse, Inc., and Richard, James, and Terry Sturdevant, individually and in their fiduciary capacity, to force them to return to the estate the SAE stock that they purchased, and to force them to comply with a stock purchase agreement.

Case No. 9048 was originally an action for specific performance based upon a stock purchase agreement against Sturdevant's Auto Parts, Inc., Oakes, North Dakota, and the executor-trustees, individually and in their fiduciary capacity, in which Glen sought to purchase stock in the Oakes corporation. The complaint was later amended to include a cause of action under the will as well as the stock purchase agreement.

Case No. 9050 is also an action for specific performance and was brought pursuant to the "Tenth" part of the will. Glen sought to force the executor-trustees to sell him stock in Sturdevant's Auto Parts, Inc., of Milbank, South Dakota, LuShir Building Company, and Kentucky Fried Chicken of Wahpeton, North Dakota.

Case No. 9049 was voluntarily dismissed at the trial court level.

house, Inc., purchased by them from the Virgil Sturdevant Estate.

The appellants, whom we shall hereinafter refer to as the Trustees, appeal from that decision to this court.

Before we reach the merits of this appeal, we must decide whether or not the merits of this case have been finally and unalterably determined by the county court's decree of distribution issued September 3, 1975.

Trustees argue that the actions brought by Glen in district court are a collateral attack upon the county court's judgment and should not be allowed. They contend that the county court has exclusive original jurisdiction over the questions raised by Glen in district court and refer this court to *In re Estate of Brudevig,* 175 N.W.2d 574 (N.D.1970). The Trustees also rely on *Manikowske v. Manikowske,* 136 N.W.2d 465 (N.D.1965) for the following proposition: "If the county court made a mistake in a matter over which it had exclusive jurisdiction and no appeal was taken, its decision has become final. The mistake cannot be corrected in a collateral action in the district court." 136 N.W.2d at 477.

The Trustees are apparently arguing that as the county court has already decided the disposition of Virgil's estate by the final decree of distribution, this decision cannot be collaterally attacked in district court even if the disposition was in error. Although the Trustees did not raise this question at the trial level, they argue that they are now estopped from raising the issue because it is jurisdictional and can be raised at any time.

It is undisputed that subject matter jurisdiction cannot be waived and that decisions made by a court without subject matter jurisdiction are void. *In re Estate of Brudevig, supra* at 577. Thus, if the district court had no jurisdiction of the subject matter in this case, jurisdiction could not be conferred upon this court by appeal from the district court's judgment.

Generally, a county court's final decree is of equal rank with judgments entered by other courts of record in this state. See authorities collected in *Manikowske v. Manikowske, supra* at 477. The county court has exclusive jurisdiction over probate and testamentary matters and a final decree of distribution entered by county court is not subject to collateral attack if the court had jurisdiction and no fraud or collusion was claimed or shown. *Schultz v. Saeman,* 150 N.W.2d 67, 70 (N.D.1967).

Furthermore, if the county court makes a mistake in a matter over which it has exclusive jurisdiction and no appeal is taken, the county court's decision becomes final. *Manikowske v. Manikowske, supra* at 477.

As Glen was not made a party to the probate proceedings in county court nor served with a notice of the proceedings, he argues that he is not bound by the county court's final decree of distribution.

As a general rule, the doctrine of *res judicata* "binds only parties to the action in which the judgment was rendered and their privies and does not affect strangers to the judgment who are neither parties nor in privity with a party to the action." *Armstrong v. Miller,* 200 N.W.2d 282, 284 (N.D. 1972); *Stockman v. Anderson,* 184 N.W.2d 53, 56 (N.D.1971); and *Feather v. Krause,* 91 N.W.2d 1, 7 (N.D.1958).

In *In re Anderson's Estate,* 76 N.D. 163, 34 N.W.2d 413 (1948), this court acknowledged that county court decrees are entitled to the same faith and credit as judgments of other courts of record, but it also noted that the county court must have jurisdiction of the parties and subject matter if its decrees are to be valid. *Id.* 34 N.W.2d at 413, Syl. para. 2.

As Glen was not made a party and served notice of the probate proceedings, we hold that the final decree of distribution of the county court is not *res judicata* and that therefore Glen is not estopped from bringing these suits in district court.

In so holding, we are aware of our decision in *Stetson v. Investors Oil, Inc.,* 176 N.W.2d 643 (N.D.1970), in which we applied

*res judicata* principles even though the parties claiming not to be bound by the judgment were not named parties to the action. *Stetson* is distinguishable in that the parties who attempted to set aside the judgment in *Stetson*, although not parties, were in privity with the parties and were thus bound by the judgment. That is not the situation here.

Another opinion is pertinent. In *Hull v. Rolfsrud*, 65 N.W.2d 94 (N.D.1954), plaintiff-trustees brought a quiet title action in district court claiming title to certain property under a testamentary trust and pursuant to the county court's final decree of distribution. Defendant denied the validity of the trust included in the final decree and claimed title to the property pursuant to a quitclaim deed signed by the beneficiaries of the trust including the plaintiff-trustees. Plaintiffs argued that defendant had no right to collaterally attack the county court's final decree of distribution because defendant was in privity with them by reason of the deed he received from decedent's heirs. This court held that defendant was not in privity with a party to the county court's decree and therefore not bound by its decision:

> "The evidence shows that . . . the defendant, is not related to the parties in any way. . He was not made a party to the probate proceedings nor served with any notice of them. Whatever interest he has under the quitclaim deed was obtained by him some three years before the probate proceedings in question were commenced. His rights whatever they are were not in issue in the probate proceedings nor are they derived through any issue decided in said probate proceeding. He had no right of control over those proceedings or right of appeal therefrom." 65 N.W.2d at 98.

▆▆▆ Although *Hull* is distinguishable on the facts, it supports the proposition of law that unless one is a party to a proceed-

ing or in privity with those who are parties to an action, he cannot be bound by the judgment in that action.[3] As we noted in *Hull v. Rolfsrud, supra* :

> "No principle is more vital to the administration of justice, than that no man shall be condemned in his person or property without notice, and an opportunity to make his defense." *Hull v. Rolfsrud*, 65 N.W.2d at 98 (citing *Boswell's Lessee v. Otis*, 9 How. 336, 13 L.Ed. 164 (1850)).

▆▆▆ Trustees also argue that even if Glen is not barred from bringing this entire action, he is estopped from challenging the purchase by James and Terry of the SAE Warehouse stock that was allegedly purchased pursuant to a stock purchase agreement. Trustees contend that the stock purchase agreement in question was carried out with the full knowledge of Glen, and the subsequent purchase of stock by James and Terry was approved by the probate court. Thus, they argue that any attack concerning the SAE stock would be a collateral attack upon the county court's decree. As we noted earlier, however, Glen was not a party to the probate proceedings and, therefore, is not bound by the county court's decision. Furthermore, in *O'Connor v. Immele*, 77 N.D. 346, 43 N.W.2d 649, 651, Syl. Para. 13 (1950), this court held that "the jurisdiction of the probate court does not extend to the determination of the rights in property left by a deceased, where such rights do not depend upon heirship or will but on contract." *See also: Riebe v. Riebe*, 252 N.W.2d 175, 178 (N.D.1977). In respect to the rights dependent upon contract, we construe the district court's findings of fact, conclusions of law and order for judgment to mean that the district court did not find that Glen in any way agreed with the Trustees, and applying Rule 52(a), N.D.R.Civ.P., we hold that not to be clearly erroneous.

---

**3.** Although we have chosen to speak of this issue as an issue generally of *res judicata*, we are of the opinion that if the final decree is not *res judicata*, it is also not immune from an attack such as Glen made in these actions for the reason that it does not violate the rule prohibiting collateral attack. *See Lende v. Wiedmeier*, 179 N.W.2d 736, 738 (N.D.1970); *Hull v. Rolfsrud, supra*, 65 N.W.2d at 98.

The major issue in this dispute is whether the Tenth Clause of Virgil's will is mandatory, or whether the clause contains merely precatory words, *i. e.* words of recommendation or advice that may be followed within the discretion of the Trustees.

The Trustees contend that the language in the Tenth Clause is advisory only and cite *In re Estate of Lubenow*, 146 N.W.2d 166 (N.D.1966), as controlling authority.

In *Lubenow*, decedent died testate devising all of his property to his nephew. The will also contained a clause, however, that read:

"'I have not made any specific bequests to my brothers and sister, nieces and other nephews, or other relatives, because I have given directions to Albert Lubenow in this regard. He will see to it that my brothers on the farm, particularly, are provided for.'" 146 N.W.2d at 167.

The county court found that this paragraph set up a trust, but held that it was void because its provisions were vague. The county court subsequently voided the entire will and ordered the estate to be administered according to the intestacy laws. The district court on appeal reversed the county court and awarded the entire estate to the testator's nephew. On appeal to this court, we construed the questionable clause of the will and held that the language was merely precatory:

"Subsequent meaningless language in the will cannot destroy the absolute and clear bequest of paragraph Second. What do the words used . . . do, or try to do? At best, they do no more than express a wish or desire on the part of the testator as to what he would have the executor and devisee do. . . . This is nothing but the expression of a hope on the part of the testator. He had confidence in Albert [nephew] and felt that Albert would 'see to it.'

"Unless the context of a will forces the conclusion that precatory words, or words of request or recommendation, were used in a stronger sense, they cannot be construed as a limitation on an absolute bequest." 146 N.W.2d at 168.

We believe that *Lubenow* is distinguishable from this case. In *Lubenow*, property was given to the testator's nephew absolutely in one clause, and limitations were arguably imposed in another clause. We held that the limitations were unenforceable. Furthermore, the Tenth Clause in Virgil's will contains language that cannot be considered precatory or advisory, *e. g.* "It is my intention . . . and directive . . . B. That my brother, Glen, and my sons, . . . shall have the right to buy additional interests in the family business to the fullest extent of their ability."

 The test used to determine if language is to be considered precatory or mandatory is the testator's intention, *i. e.* whether or not the testator intends to control the disposition of his property. If the testator intends a disposition, the words are considered testamentary even if the questionable words are mild in form. 1 Bowe-Parker: Page on Wills § 5.19. Trustees argue that the language in paragraph C. of the Tenth Clause of the will indicates that Virgil intended the Trustees to have full discretion in the sale of any stock and, therefore, the Tenth Clause is precatory only. The district court noted in its memorandum opinion that the language in the Tenth Clause, taken as a whole, is not precatory, but is mandatory:

"Virgil's will, at paragraph ten, states it is his 'intention, wish and directive' that the objective contained in said paragraph be carried out. Certainly this language, taken as a whole, is not equivocal, especially the words 'intention' and 'directive'. Even a wish of the testator has been held equivalent to a command and to be testamentary in character where clearly expressed. The word 'direct' has been held to be mandatory as a command or order. The only discretionary language in paragraph ten is found in subparagraph C thereof wherein the trustees are to be the final arbiters as to whether or not any other of decedents children will be accorded the right to purchase stock in the family businesses. A fair reading of the entire paragraph cannot

lead to the conclusion that this privilege to restrict purchases extends to Glen." [Footnotes omitted.]

We agree with the district court in its view that the Tenth Clause in Virgil's will is mandatory.

 Trustees also argue that even if the Tenth Clause of Virgil's will is found to be mandatory, two of the Sturdevant businesses, *i. e.* Kentucky Fried Chicken (KFC) and LuShir Building Company (LuShir), do not qualify as "family businesses . . . relating to the auto parts and related lines . . ." pursuant to the Tenth Clause of Virgil's will, and thus should not be included in the businesses available for purchase.

LuShir is a holding company and owns some of the buildings in which the Sturdevant auto parts enterprises are located. The KFC franchise was purchased just prior to Virgil's death and the record indicates that the other Sturdevant businesses used the services of the franchise for catering large meetings, parts drops, and as a place for management meetings. The KFC franchise also shares a parking lot with another Sturdevant business.

We find that there is sufficient evidence to support the finding by the district court that LuShir and Kentucky Fried Chicken are included in the "family businesses" mentioned in Virgil's will. In any event, the finding is not clearly erroneous, and thus, under Rule 52(a), N.D.R.Civ.P., we will not set it aside.

 The Trustees also argue that the district court erred by ordering the Trustees to spend trust assets to determine the value of the stock sought to be purchased and by establishing time limitations in which the purchases must be made. The district court ordered the Trustees to have a determination made of the fair market value of the stock (according to a formula supplied by the district court) within 90 days of the judgment. The district court also ordered that those entitled to purchase stock must express their desire to purchase and exhibit proof of their ability to purchase within 90 days after the value of the

stock has been determined. We find no abuse of discretion.

 Finally, the Trustees argue that the district court erred when it dismissed Civil No. 9049 without awarding costs. In view of the consolidation of actions in this case, we find no abuse of discretion by the district court for its refusal to award costs.

The judgment of the district court is affirmed.

SAND, PAULSON, PEDERSON and VANDE WALLE, JJ., concur.