FETZER ELECTRIC, INC., a corporation, Plaintiff and Appellee,

v.

DEVELCO, INC., a corporation; Carl Mueller, Defendants,

L & M Partnership, Silas Liechty, Jon Liechty, and Ezra Liechty, Defendants and Appellants.

Civ. No. 10132.

Supreme Court of North Dakota.

July 9, 1982.

Fleck, Mather, Strutz & Mayer, Bismarck, for plaintiff and appellee; argued by Steven A. Storslee, Bismarck.

Max D. Rosenberg, Bismarck, for defendants Develco, Inc., a corporation, and Carl Mueller; no appearance.

Hjellum, Weiss, Nerison, Jukkala & Wright, Jamestown, for defendants and appellants; appearance by Charles M. Carvell; argued by John Hjellum, Jamestown.

ERICKSTAD, Chief Justice.

This is an appeal from an amended judgment and order of the District Court of Burleigh County denying post-trial motions. A six-member jury returned a verdict awarding Fetzer Electric damages in the amount of $22,930.25 against Develco, Inc., L & M Partnership, Carl Mueller, Silas Liechty, Jonathan Liechty, and Ezra Liechty (hereinafter L & M). Judgment was entered in the sum of $22,930.25 with interest at six percent from January 1, 1979. The defendants moved for judgment notwithstanding the verdict or in the alternative for a new trial. Those motions were denied. We affirm the judgment and the order denying the post-trial motions.

Develco, Inc., has admitted liability and is therefore not a part of this appeal.

The dispute arose out of the construction of the Pine Lake Apartments in Bismarck. The apartments are owned by the L & M Partnership. That partnership consists of Carl Mueller, Silas Liechty, Jonathan Liechty, and Ezra Liechty. Develco, Inc., was a North Dakota corporation and constructed the Pine Lake Apartments. Fetzer Electric worked on the Pine Lake Apartments and other Develco, Inc., projects and was not fully paid. Fetzer instituted this action to be paid for work performed.

The allegation in Fetzer's complaint relevant to this appeal is:

"8.

"That the affairs and assets of the two corporate Defendants, Develco and L & M Investments Corporations, were so intermingled and confused that insofar as the public and the Plaintiff were concerned the two corporations conducted a single business; that the corporations were conducted in such a manner that they became mere instrumentalities and agents of each other in their relations with the Plaintiff becoming identical or indistinguishable in fact."

The jury answered "yes" to the following special interrogatory:

"QUESTION 1: Were the affairs and assets of L & M Partnership and Develco, Inc., so intermingled and confused that insofar as the public and Fetzer Electric were concerned, the two business entities conducted a single business?"

After the jury verdict was returned, the defendants moved for judgment notwithstanding the verdict or in the alternative for a new trial. Those motions were denied. The only issues for our review are: (1) Whether or not there is substantial evidence to support the jury verdict? and (2) Whether or not the trial court manifestly abused its discretion in denying the post-trial motions?

In determining the sufficiency of the evidence to sustain the verdict of the jury, we must view the evidence in the light most favorable to the verdict. *Vallejo v. Jamestown College*, 244 N.W.2d 753, 757 (N.D. 1976). It is only when reasonable men can reach but one conclusion upon review of the issues that the evidence becomes a question of law for the court. *Vasichek v. Thorsen*, 271 N.W.2d 555, 559 (N.D.1978).

Upon review of the denial of the motions for judgment notwithstanding the verdict or in the alternative for a new trial, we will reverse the trial court only if it is clear that it manifestly abused its discretion. *Id.*

We have reviewed the evidence and have concluded that there is substantial evidence to sustain the jury verdict. Having so concluded, we find that the trial court did not abuse its discretion in denying the post-trial motions.

■ After all parties to this action had rested, the court, before instructing the

jury, submitted the proposed written instructions to counsel and asked that exceptions be noted. The instruction relevant to this appeal was not excepted to by any party. That instruction is therefore the settled law of this case. *Grzadzielewski v. Walsh County Mutual Insurance Company,* 297 N.W.2d 780, 781 (N.D.1980); *Matter of Estate of Honerud,* 294 N.W.2d 619, 622 (N.D.1980); *Lembke v. Unke,* 171 N.W.2d 837, 848 (N.D.1969); *Chicago, M., St.P. & P.R. Co. v. Johnston's Fuel Liners,* 122 N.W.2d 140, 147 (N.D.1963). The instruction reads in pertinent part:

"Under normal business relationships, L & M Partnership is only liable to Develco or others for the work performed directly for its benefit.

"However, in this case Fetzer Electric is alleging that because of the relationship of L & M Partnership and Develco, Inc., the members of the L & M Partnership should be held liable for the obligations of the corporation. In order to find for Fetzer Electric under this theory of law, you must find that the affairs and assets of L & M Partnership and Develco, Inc., were so intermingled that insofar as the public was concerned, the two business entities conducted a single business. In other words, you must find that the two business entities operated in such a manner that they became instrumentalities, adjuncts and agents of each other and in their relations with the plaintiff, identical or indistinguishable in fact."

Because no objections were made to the instruction at issue, our discussion involves solely whether or not there was substantial evidence to support the jury's verdict.

L & M Partnership was formed in 1969. The members of the partnership have never changed and the partnership survives today. All the partners are general partners. The partnership's first construction project was the Kirkwood Apartment Building in Bismarck. That building is adjacent to the Pine Lake Apartments. Although a construction firm was hired to construct the Kirkwood Apartment Building, L & M Partnership entered into a contract directly with Fetzer Electric for the performance of electrical work. Carl Mueller was the spokesman of the partnership for the business it transacted with Fetzer Electric on the Kirkwood Apartments. Mueller was also the spokesman for Develco, Inc., in its business with Fetzer Electric. Fetzer Electric was paid in full for the work done on the Kirkwood Apartments. Its records indicate that it was also paid in full for the work done on the Pine Lake Project. Though Fetzer's records show that Develco owes money for projects other than Pine Lake, and though no contention is made that L & M was directly involved with those projects, Fetzer argues that L & M is liable for the debt because of the intermingling of affairs between L & M and Develco.

The subject matter of this dispute, the Pine Lake Apartments, was conceived in 1975. The project was to include several apartment buildings, a club house and garages. It became known as the Pine Lake Project.

The events surrounding the construction of the Pine Lake Project are not entirely clear from the record. It appears that the construction on the first building in the Pine Lake Project began in early 1975 under the supervision of Jerry Ostrander. A construction loan was obtained from Gate City by L & M Partnership to finance the project. The testimony reveals that Develco did not exist when the construction began, but was in the formative stages during late 1975. In early 1976 the articles of incorporation were issued. At that time L & M paid some bills directly and later paid Develco for work completed. Develco in turn paid the construction employees and sub-contractors.

The original shareholders of Develco, Inc., were Jerry Ostrander, Gene Hanson, Floyd Solem, Silas Liechty, Jonathan Liechty, and Carl Mueller. Each shareholder contributed $200 in capital. Jerry Ostrander testified that he became involved in Develco, Inc., by virtue of his friendship with Gene Hanson. Gene Hanson was a friend of Silas Liechty's. Floyd Solem was an employee of Silas Liechty's before becoming in-

volved in Develco. Develco's profit for constructing the Pine Lake Project was to be the tools purchased for and used in the construction of the project.

By the time Develco, Inc., was formally incorporated, the Pine Lake Project had been underway for approximately one year. Ostrander, Hanson, and Solem resigned from the corporation shortly after its formation. Ostrander explained the reason for the resignation:

"A. As I recall, we had—when I say 'we', Gene Hanson, Floyd Solem and myself had discussed some other things that Si Liechty was involved in, and we felt Develco Corporation was just a front. We were afraid for our own financial status and thought that we'd best get out of it before we found ourselves liable for their bills.

"Q. What do you mean, you feared for your own financial status?

"A. Well, if I recall right, Develco was getting some—there was some problems with paying the subcontractors that we had working there, and they were supposed to get—or L & M was supposed to get a loan to cover this, but it was running short on funds or something. I don't know what it was. But we decided we'd best get out."

The resignation of Ostrander, Hanson, and Solem, left Silas Liechty, Jonathan Liechty, and Carl Mueller as shareholders in the corporation. Later, Carl Mueller's son, Dale Mueller, became a shareholder.

In 1975 and 1976, major problems arose in the construction of the first building of the Pine Lake Project causing the collapse of the second and third floors of that building. Changes were necessary and cost overruns resulted. By the end of 1976, the first building was incomplete and construction had not begun on the second building. At that time, Fetzer Electric had started its work in the first building of the project.

During 1976, Wayne Wickenheiser was employed by Develco as a carpenter. In April, 1977, he was made a shareholder in the corporation. Working in coordination with Carl Mueller, Wayne Wickenheiser obtained additional financing for the Pine Lake Project from First Federal Savings & Loan in Bismarck. The financing from First Federal was to pay for the construction of the second building which was started in 1977. However, a large amount of that loan was used to pay the cost overruns of the first building. Consequently there was a shortage of funds in the Develco account for the construction of the second building.

While the Pine Lake Project was under construction, Develco also started other projects. These projects, while smaller than the Pine Lake Project, were also underway during 1976 through 1979. Fetzer worked on several of those projects for Develco at the same time that it was working on the Pine Lake Project. Ed Kaseman, president of Fetzer Electric, testified that at times Fetzer Electric worked on several of Develco's projects on the same day.

Terry Swift, an accountant hired by L & M Partnership, testified that L & M paid all the bills for these projects directly in 1976. Develco made no payments prior to 1977. Carl Mueller testified that even after Develco started paying bills in its own name, L & M made payments directly to Fetzer Electric as late as November, 1978.

Fetzer Electric sent its bills to the attention of Carl Mueller. It established three separate ledger cards for the work performed at the request of Carl Mueller. The ledger cards were established in the names of "Carl Mueller", "Develco, Inc.", and "Carl Mueller and Develco, Inc." When Carl Mueller brought in checks for the payments of the billings, he designated which accounts on the ledger cards should be marked paid. The record reveals that Mueller at various times directed that changes in the accounts be made, switching payment from one card to another.

By the time Develco became insolvent, the Fetzer Electric ledger account cards showed the Pine Lake Project as paid in full. The only accounts left open on the ledger cards were the accounts for projects other than Pine Lake.

As additional evidence of intermingling of affairs between L & M and Develco, Fetzer revealed a dispute between L & M and Develco concerning the amount which L & M owed Develco for the Pine Lake Project. According to Mr. Wickenheiser, approximately five individuals, or firms, attempted to determine the amount. No one was able to come up with the same number twice. Wayne Wickenheiser attributed the discrepancy in figures to the intermingling of affairs between L & M and Develco.

Curtis Peltz was among the individuals who attempted to determine the amount owed by L & M to Develco. Peltz was hired by Develco in May, 1977, as office manager. Though he had no formal education in accounting, he was hired to set up a bookkeeping system for Develco. He attempted to determine the amount L & M owed Develco as of September or October of 1977. He reviewed the records for the previous three years and arrived at a tentative figure of $140,000. Peltz conveyed this figure to L & M and stressed that there may be amounts yet undiscovered. The $140,000 sum was then paid by L & M to Develco. Peltz testified that by the end of 1977 he discovered an additional $110,000 to $112,000 owed by L & M to Develco.

■ L & M disputed Peltz's $110,000 to $112,000 figures and hired an accountant, Terry Swift, to review the situation. He testified that the reason for the disagreement between L & M and Develco was allocation of indirect costs. Swift testified that his review indicated that L & M owed Develco $108,559.06 as of May 9, 1978. Peltz testified that Swift's review therefore basically verified his calculations and so L & M made an additional payment to Develco.

We believe that the foregoing discussion of the evidence adduced at trial, while not exhaustive, is illustrative of the type of evidence which the jury could have viewed as indicative of an intermingling of affairs between Develco and L & M. There was such activity that the jury was justified in believing that Develco and L & M were one and the same. We therefore will not disturb the jury's verdict nor will we reverse the trial court's order denying the post-trial motions.

■ L & M argues that even if we conclude that the jury's verdict should not be disturbed, Silas, Jonathan, and Ezra Liechty should not be held liable under the case of *Sutton v. Reagan & Gee*, 405 S.W.2d 828, 837 (Tex.Civ.App.1966). The Texas Court of Civil Appeals expressed the following rule in *Sutton* :

"Whether or not a shareholder will be insulated from personal liability should depend on the use, or misuse, which *that* shareholder is making of the corporate form. The only shareholders who should be held personally liable are those who have used the corporation to bring about results which are condemned by the general statements of public policy which are enunciated by the courts as 'rules' which determine whether the courts will recognize their own child." *Id.*

L & M urges that we adopt this rule and hold only active members of the corporation liable. It argues that because Silas and Jonathan Liechty were not active in Develco (a fact in dispute) and did not deal directly with Fetzer Electric they should not be held liable. As to Ezra Liechty, L & M argues he should be exonerated from liability because "not only did he have no dealings with Fetzer but he was never even associated with Develco." L & M argues that, of the partners, only Carl Mueller should be held liable under *Sutton.*

Without deciding whether or not we would apply that rationale in an appropriate case, we hold here that the rationale in *Sutton* is inapplicable to this case. The instruction given to the jury in this case was not a typical "piercing the corporate veil" instruction, which would hold each of the shareholders liable for the debts of the corporation. Instead, the court instructed the jury to determine whether or not the *members of the L & M Partnership* should be held liable for the obligations of the corporation because "the affairs and assets of L & M Partnership and Develco, Inc., were so intermingled that insofar as the

public was concerned, the two business entities conducted a single business. In other words, you must find that the two business entities operated in such a manner that they became instrumentalities, adjuncts and agents of each other and in their relations with the plaintiff, identical or indistinguishable in fact." Under this instruction and through the special verdict form, the jury, in returning its verdict for Fetzer Electric, did not hold the corporate shareholders individually liable. Rather, it held L & M Partnership liable for the debts of Develco because of the intermingling of the affairs of the two entities. The general partners of the partnership are liable for the debts of the partnership. § 45–06–07, N.D.C.C. We therefore hold the rationale of *Sutton* inapplicable and affirm the judgment of the trial court and the order denying the post-trial motions.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.