Robert P. McCARNEY and Elizabeth Ann McCarney, Plaintiffs

v.

Eric J. KNUDSEN and Dann G. Knudsen, as Personal Representatives of the Estate of Jerry M. Knudsen, Susan F. Knudsen and Lela Knudsen, Defendants

and

Eric J. KNUDSEN and Dann G. Knudsen, as Personal Representatives of the Estate of Jerry M. Knudsen, deceased, Cross-Plaintiffs and Appellants

v.

Susan F. KNUDSEN, Cross-Defendant and Appellee.

Civ. No. 10436.

Supreme Court of North Dakota.

Dec. 2, 1983.

E.J. Rose, Bismarck, for cross-plaintiffs and appellants; argued by E.J. Rose.

Mills & Moore, Bismarck, for cross-defendant and appellee; argued by William R. Mills, Bismarck.

SAND, Justice.

This is an appeal by Eric J. Knudsen and Dann G. Knudsen, as personal representatives of the estate of Jerry M. Knudsen, from a judgment of dismissal entered upon the trial court's order granting Susan F. Knudsen's motion for a directed verdict of dismissal of the cross-claim. We affirm.

The cross-claim in this appeal revolves around the proceeds of a policy of insurance on the life of Jerry M. Knudsen. Eric and Dann Knudsen assert that Susan Knudsen, who was the named beneficiary of the policy, should be required to use the proceeds of the policy to pay a note to Robert P. McCarney and Elizabeth Ann McCarney that is secured by a mortgage on certain real property.

Jerry M. Knudsen was the owner of 65 acres of land in Burleigh County, North Dakota, that was burdened by two mortgages in favor of two banks. When the loans, totaling approximately $130,000.00, became due in the fall of 1978, Jerry Knudsen requested that the McCarneys lend him the money to pay them off. Jerry and Susan executed a promissory note dated October 23, 1978, payable to the McCarneys in the amount of $130,000.00. The note was secured by a mortgage executed by Jerry and Susan on the 65-acre parcel as well as a mortgage on another parcel of land.

Through Mr. V.J. Spaedy, an insurance agent, Jerry Knudsen's professional corporation, Jerry M. Knudsen, M.D., P.C., applied for a life insurance policy on the life of Jerry Knudsen on November 3, 1978. The policy was approved with an effective date of March 1, 1979. Susan Knudsen was named as the beneficiary.

After Jerry Knudsen's accidental death on October 2, 1979, Susan received $180,-000.00 in settlement of her claim as beneficiary under the policy. Eric and Dann now assert that Susan must pay off the McCarney loan out of those funds.[1]

---

1. The instant case and *Matter of Estate of Knudsen*, 342 N.W.2d 387 (N.D.1984) (Civil No. 10,427), which is an appeal from a judgment entered on a jury verdict upon trial after a remand ordered in *Matter of Estate of Knudsen*, 322 N.W.2d 454 (N.D.1982), have reached us in a perplexing posture.

One of the issues in Civil No. 10,427 is whether or not Jerry Knudsen intended to preclude Susan Knudsen from sharing in his estate because she was provided for by transfer outside the will by receiving life insurance proceeds outside the will. *See,* § 30.1–06–01, N.D.C.C., and *Matter of Estate of Knudsen,* 322 N.W.2d 454 (N.D.1982).

The central issue in the instant case is whether or not Susan Knudsen received the proceeds of a life insurance policy subject to an implied trust requiring her to use those proceeds to repay the McCarney loan. Payment of the McCarney loan would, of course, redound to the benefit of the estate by adding to its assets a 65-acre parcel of land free of any mortgage.

Jerry Knudsen's sons were successful in the court below in having Susan Knudsen excluded from sharing in the estate in Civil No. 10,427 because Susan received the benefit of insurance policies. We note that in Civil No. 10,427 more than the instant policy was involved. In the instant case, they seek to overturn a judgment entered on a directed verdict dismissing their claim in which they seek to establish an implied trust requiring Susan to pay the McCarney loan.

Thus, we have a situation involving substantially the same issues in which two triers of fact, each acting properly on the evidence before it, could render separate decisions, the net effect of which could result in an injustice. One trier of fact could find that, because of the insurance proceeds she received, Susan was provided for outside the will. In the other instance the trier of fact could find that the insurance proceeds

The McCarneys brought this foreclosure action, which resulted in a judgment in their favor. They are not parties to this appeal.

Eric and Dann Knudsen have stated the following issue:

"Did the trial court err in directing a verdict for the Cross-defendant, Susan F. Knudsen, on the grounds:

"1. No evidence had been submitted during the trial to prove that Susan F. Knudsen during the life of her husband ever entered into any agreement with him that she would use the proceeds from the insurance policy to pay the McCarney debt; and,

"2. Section 26–10–18 (NDCC) provides in essence that the proceeds of a life insurance contract are not subject to the debts of the deceased except by special contract and no evidence of any contract, let alone a special contract required by the statute has been shown."

They argue that:

"The merits of the cross-plaintiffs' claim is not at this time before the court. The only issue is whether or not any evidence was presented during the trial to raise a question of fact as to whether or not such claim had merit or not."

We do not agree that the "issue is whether or not any evidence was presented during the trial to raise a question of fact."

In affirming a directed verdict, we said in the Syllabus in *Askew v. Joachim Memorial Home*, 234 N.W.2d 226, 229–230 (N.D.1975):

"10. A motion for a directed verdict is to be denied unless the evidence is such that reasonable men, without weighing the credibility of witnesses or otherwise considering the weight of the evidence, could not disagree upon the conclusion to be reached.

"11. A mere scintilla of evidence in favor of the party against whom the motion for a directed verdict is made does not preclude the granting of the motion.

"12. A motion for a directed verdict should not be granted unless the moving party is entitled to a judgment on the merits as a matter of law. In determining whether or not the moving party is entitled to a judgment on the merits as a matter of law, the evidence should be evaluated in the light most favorable to the party against whom the motion is made."

*See also, Farmers Co-op. Elevator of Cavalier v. Lemier,* 328 N.W.2d 833 (N.D. 1982). Thus the question

"... is not whether there is literally no [or any] evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." 9 Wright and Miller, Federal Practice and Procedure: Civil § 2524, p. 543 (1971).

The standard of review on appeal is the same as in the trial court. A directed verdict is granted as a matter of law, which is fully reviewable on appeal. *Haggard v. OK RV Sales,* 315 N.W.2d 475 (N.D.1982).

Directed verdicts should be sparingly granted and ought not usually be granted where very little time or expense is saved and there is a risk of a new trial becoming necessary. Here, the motion was granted after all the evidence was in and all parties had rested. As we said in *Starr v. Morsette,* 236 N.W.2d 183, 189 (N.D. 1975):

Susan received (and upon which the first trier of fact relied in supporting its decision) were impressed with an implied trust for payment of the McCarney loan.

By not trying both cases together, the possibility of two proper decisions by different triers of fact exists, which might result in an injustice. This could have been avoided by presenting to

the trier of fact in the instant case evidence bearing on the issue of whether or not Susan Knudsen was provided for outside the will to such an extent as to be precluded, in part or in whole, from sharing in the estate. The parties also could have agreed to present all the facts and evidence on this issue to one trier of fact and be bound by the verdict on all issues.

"... It is a better practice to let the case go to a jury verdict because the trial court may then consider postverdict motions on the basis of a complete record, and any appellate court is in a position to reinstate or affirm or modify the verdict, if it disagrees with the trial court's disposition, and another trial may thus be avoided. See 5A Moore's Federal Practice, § 50.05[3]."

*See also*, 9 Wright and Miller, Federal Practice and Procedure: Civil § 2533 (1971). Nevertheless, evaluating the evidence presented at trial in the light most favorable to Eric and Dann, we affirm the trial court's order granting Susan's motion for a directed verdict of dismissal.

█ In order to require Susan to apply the proceeds of the insurance policy to the debt owed to the McCarneys, Eric and Dann by competent evidence must establish that an implied trust was created, imposing upon Susan such duty and responsibility. This is a heavy burden.

"As a general rule, the insured has the right to designate the person or persons who shall be beneficiaries under the insurance contract and they are entitled to its proceeds.

> * * * * * *

"... Nor do the proceeds belong to the insured's estate, where there is a named beneficiary ...." 2 Appleman, Insurance Law and Practice § 771 (1966 Ed.)

█ We have held that where the insured set up an insurance trust under which the proceeds of life insurance were to be used by the trustees to pay the expenses of the administration of his estate and the balance paid to his children, the proceeds never became a part of the estate. *Maher v. Ramsey County*, 75 N.D. 760, 32 N.W.2d 679 (1948). · *See also*, 5 Couch on Insurance 2d § 27:166.

█ In addition to the right to name beneficiaries, the insured usually also has the right to change beneficiaries. *See, Manikowske v. Manikowske*, 146 N.W.2d 880 (N.D.1966), clarifying *Manikowske v. Manikowske*, 136 N.W.2d 465 (N.D.1965).

In granting the motion for a directed verdict, the trial court stated two principal reasons for granting the motion. One was that he found no evidence to prove that Susan ever agreed with Jerry that she would use the proceeds from the insurance policy to pay the McCarney debt. The second was his view that § 26–10–18, N.D. C.C., provides that the proceeds of a life insurance contract are not subject to the debts of a deceased, except by special contract.

Jerry Knudsen's Group Insurance Record Card relating to the policy in issue shows the primary beneficiary to be Susan Knudsen and the contingent beneficiary to be his estate. It provides, inter alia, that "I hereby designate the above beneficiary to receive the proceeds of my insurance payable at the time of my death." It indicates that Jerry Knudsen signed the card on November 3, 1978, and that the policy was to become effective March 1, 1979. The card contained spaces for changing beneficiaries. The policy in issue provided that "The insured Employee may, from time to time and without the consent of the Beneficiary, change the Beneficiary by filing written notice of the change...."

Section 26–10–18, N.D.C.C., provides, in part:

"*26–10–18. Avails of life insurance policy payable to deceased or to his heirs, personal representatives, or estate — Exemption — Distribution.* — The avails of a life insurance policy ... when made payable to the deceased, to the personal representatives of the deceased, to his heirs, or to his estate, shall not be subject to the debts of the decedent upon the death of such insured or member of such society except by special contract.... Nothing contained in this section shall:

1. Affect, in any manner, any life insurance policy or beneficiary certificate which is made payable to a designated person, including the spouse of the insured, or to persons or to members of a family designated as a class, such as 'all children' or 'all brothers

and sisters', even though the members of such class are not designated by name; or...."

The statute has been the subject of much litigation. After citing 18 cases involving § 26-10-18, N.D.C.C., and its predecessors, this Court summarized the holdings in those cases in *Hill v. Schroeder,* 156 N.W.2d 695, 698 (N.D.1968):

> "Under the various forms of the statute we have held, as may be found from a reading of the foregoing cases, that the subject matter of the statute is the distribution of the avails of such life insurance; that the avails do not become a part of the estate of the deceased but belong to the heirs personally; that such avails pass to the heirs of the insured by contract and not by descent, the same as though their names had been written into the insurance policy as beneficiaries; that the avails of such insurance must be inventoried in the estate but do not become a part of the estate; that the statute is not an exemption statute, as the beneficiaries have no personal liability for the debts of the insured deceased. We have held that the avails of the insurance pass through the executor or administrator to the heirs as through a conduit without becoming involved in the estate in any way. Therefore the estate does not become involved with the avails, either. Each must be handled separately, and the executor or the administrator, and not the probate court, is concerned with the avails."

*See also, In Re Harding's Estate,* 235 Iowa 337, 16 N.W.2d 585 (1944), in which the plaintiffs were creditors of the insured decedent who wanted to reach the proceeds of insurance policies payable to the estate and to the executors, administrators, and assigns. Although there was evidence that the insured thought that creditors could reach the proceeds if he made the policies payable to his estate, the Iowa Supreme Court affirmed a directed verdict in favor of the heirs of the insured, saying, in 16 N.W.2d at 590, that "The evidence was insufficient to establish the type of agreement that must be shown to meet the mandate of the statute."

Eric and Dann Knudsen assert that the statute has no application in this lawsuit and therefore there need be no special contract. Section 26-10-18, N.D.C.C., does expressly state:

> "... Nothing contained in this section shall:
>
> 1. Affect, in any manner, any life insurance policy or beneficiary certificate which is made payable to a designated person, including the spouse of the insured, ..."

Thus, the statute is not specifically applicable to the instant policy, which is made payable to a designated person—Susan Knudsen, the wife of the insured. We have said, however, that:

> "... The great purpose of the statute as originally enacted was to exempt the avails of life insurance contracts from the claims of creditors of the insured, reserving, however, to the insured the right to provide by special contract that in case of his death the proceeds shall be available for the payment of a debt or debts of the insured...." *Jorgensen v. De Viney,* 57 N.D. 63, 222 N.W. 464, 471 (1928).

■ If the avails of a life insurance policy payable to the deceased, his personal representatives, his heirs, or his estate are exempt from the claims of his creditors, a fortiori this is true of the avails of a life insurance policy payable to a named beneficiary. *Farmers' State Bank v. Smith,* 36 N.D. 225, 162 N.W. 302 (1917), involved a policy payable to the insured's estate, the proceeds of which the creditor bank wanted to be paid on a debt of the insured. In construing a predecessor to § 26-10-18, N.D.C.C., this Court said, in 162 N.W. at 304:

> "The only question is: Whom should the policy pass to, and shall it be burdened with debts or not? *If made to the heirs in name it would certainly not have been burdened with the debts of the deceased....*" (Emphasis added).

As noted earlier, Eric and Dann Knudsen's claim rests on the premise that Susan Knudsen holds the proceeds of the insurance policy as an implied trustee with a duty to pay off the McCarney loan. Section 59–01–06, N.D.C.C., provides, in pertinent part:

"*59–01–06. Implied trust—How created.*—An implied trust arises in the following cases:

1. One who wrongfully detains a thing is an implied trustee thereof for the benefit of the owner;

2. One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an implied trustee of the thing gained for the benefit of the person who would otherwise have had it;

3. Each one to whom property is transferred in violation of a trust holds the same as an implied trustee under such trust, unless he purchased it in good faith and for a valuable consideration; ..."

An implied trust, whether resulting or constructive, arises by operation of law and must be established by clear and convincing evidence. *Scheid v. Scheid*, 239 N.W.2d 833 (N.D.1976).

"... An implied trust may be either a resulting trust based on the implied intention of the parties or a constructive trust imposed by a court of equity to prevent unjust enrichment. *Bodding v. Herman*, 76 N.D. 324, 35 N.W.2d 561; *Shong v. Farmers' & Merchants' State Bank*, N.D., 70 N.W.2d 907; *Van Sickle v. Olsen*, N.D., 92 N.W.2d 777. An implied trust is one created by operation of law. Section 59–01–05, N.D.C.C. It arises where one gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act. He becomes an implied trustee of the thing gained for the benefit of the person who would otherwise have had it, unless he can prove he has some other or better right thereto. Section 59–01–06,

N.D.C.C. ..." *Manikowske v. Manikowske*, 136 N.W.2d 465, 480 (N.D.1965). *See also, Weigel v. Rippley*, 283 N.W.2d 123 (N.D.1979); *Kutchera v. Kutchera*, 189 N.W.2d 680 (N.D.1971); and *McDonald v. Miller*, 73 N.D. 474, 16 N.W.2d 270 (1944).

The requirement of clear and convincing evidence to establish the existence of an implied trust was explained in *Zundel v. Zundel*, 278 N.W.2d 123, 129–130 (N.D. 1979):

"The plain language of prior opinions of this court have stated a clear and convincing standard of proof is the necessary requirement to the establishment of an implied trust.... [U]nder the clear and convincing standard, the evidence must be such that the trier of fact is reasonably satisfied with the facts the evidence tends to prove as to be led to a firm belief or conviction.

\* \* \* \* \* \*

"... If the record contains substantial evidence sustaining the decision of the trial judge that may fairly be said to comply with the requirement that the proof be clear and convincing, this court will not substitute its judgment for that of the trial court...." (Citations omitted).

Eric and Dann Knudsen point to certain testimony at trial in support of their theory that Susan Knudsen retains the insurance proceeds as an implied trustee.

Mr. McCarney testified that Jerry Knudsen volunteered to take out insurance, saying "And I will take out life insurance in case something happens to me, and that will pay for it." He also testified that he then told Jerry to go down to his son-in-law and take out the insurance with him.

Susan Knudsen testified that Jerry had told her, "Sure. Now I have to get an insurance policy so I can feed his son-in-law." When asked why the professional corporation was taking out the insurance, Susan answered:

"A. For quite some time Mr. Ranta was telling Jerry, 'You've got to get

some insurance through the corporation. You'll save money.' And so it was taken out after thinking about taking out insurance for a long time, and plus then Jerry could free the money from Mac.

"Q. For what?

"A. For the land."

She also testified that after Jerry Knudsen died she told Dann that there was insurance to pay for the land. She also testified that sometime later, after being told by her legal counsel that "that was not my debt. That was an estate debt," she told Dann something like "I guess the loan wasn't insured. Dr. Knudsen wanted me to have the money."

V.J. Spaedy testified that he "was brought into the picture by Mr. McCarney to—because of refinancing some of Dr. Knudsen's debt to get additional—additional insurance coverage for liquidity purposes, debt purposes."

Eric and Dann note in their brief that, after the insurance had been applied for, but before it became effective, and the note and mortgage had been executed, Mr. McCarney advanced approximately $105,-000.00 to pay off one bank and that after the insurance became effective the other bank was paid. This indicates that Mr. McCarney did not rely on insurance as a condition for making the loan. Eric and Dann acknowledge, in fact, that they "do not contend that we are arguing on the merits that Mr. McCarney was to be·protected by insurance." There is no record evidence that the McCarneys have attempted to reach the proceeds of the insurance policy to satisfy the debt owed them.

 The evidence in the record having any tendency to support a theory of an implied trust can just as easily be construed to support other conclusions, such as: (1) Jerry Knudsen intended to get insurance to provide Susan with the wherewithal to repay the loan or any other debts she chose to but was not requiring that the proceeds be so used; (2) McCarney thought Jerry Knudsen was going to get insurance to cover the loan, although not required to as a condition of the loan; (3) that the insurance was secured only to provide liquidity, not necessarily to pay off the loan; and (4) that Susan Knudsen, until informed otherwise by her attorney, may have thought she was required to use the insurance proceeds to repay the McCarney loan.

The evidence tending to show that Susan Knudsen thought she was required to use the insurance proceeds to repay the McCarney loan, rather than establishing an implied trust, can as easily be construed to show that she had a mistaken belief that she, as the wife of Jerry Knudsen, was responsible for all the debts of the estate. She may even in her own mind feel a moral obligation to repay the loan, which, however, does not rise to a legal obligation and does not show the existence of an implied trust.

If the evidence shows an intention on the part of Jerry Knudsen to assure repayment of the McCarney loan through the proceeds of an insurance policy on his life, it also shows that such intention was not carried out.

We hold that an implied trust requiring Susan Knudsen to use the proceeds of the life insurance policy in which she was named as the primary beneficiary to repay the McCarney loan was not established by clear and convincing evidence.

For the reasons stated, the judgment is affirmed.

VANDE WALLE, Acting C.J., GIERKE and PEDERSON, JJ., and ILVEDSON, Surrogate Judge, concur.

ILVEDSON, Surrogate Judge, sitting in place of ERICKSTAD, C.J., disqualified.