Robert J. DEICHERT, Plaintiff, Appellant and Cross–Appellee,

v.

Harold W. FITCH, Defendant, Appellee and Cross–Appellant.

Civ. No. 870351.

Supreme Court of North Dakota.

May 26, 1988.

Wefald Law Office, Ltd., Bismarck, for plaintiff, appellant and cross-appellee; argued by Robert O. Wefald.

Rausch & Rausch, Bismarck, for defendant, appellee and cross-appellant; argued by James P. Rausch.

ERICKSTAD, Chief Justice.

Robert J. Deichert appeals from a judgment dismissing his complaint against Harold W. Fitch. The district court granted defendant Fitch's motion for a directed verdict after Deichert submitted all of his evidence to a nine-member jury. We affirm.

This dispute involves the sale of a small tract of real property situated along the Missouri River, approximately nine miles north of Bismarck, North Dakota. Deichert wanted to buy a parcel of land along the river. After looking at several developments Deichert decided to buy Fitch's riverfront property. During negotiations in the summer of 1982, Fitch showed Deichert the boundaries of his property by walking around the property.

Fitch walked too far. Fitch erroneously represented to Deichert that he owned all of the property on which the two of them walked. Fitch apparently showed Deichert approximately 6.87 acres when in fact Fitch only owned approximately 4.65 acres. Unfortunately, the mistake, characterized by the district court as a "[m]utual mistake" [1] was not discovered before the parties executed a contract for deed on August 2, 1982.

In the contract for deed, Fitch agreed to sell 4.65 acres "more or less" for $125,000. Deichert gave Fitch a $20,000 down-payment and a condominium valued at $90,000. The remaining balance of $15,000 was payable in three equal annual installments beginning on August 2, 1983.

Deichert hired a surveyor before July of 1985 and "knew by July of 1985 that I [Deichert] didn't own that two acres to the south...." Notwithstanding his knowledge of the mistake, Deichert paid the last annual installment and accepted a warranty deed for the 4.65 acres Fitch actually owned.

Deichert commenced this lawsuit in May of 1986 for the value of the land Fitch showed him but did not convey. Fitch subsequently filed a third-party complaint against the record title owners of the disputed tract, seeking to quiet title by adverse possession. Fitch was unsuccessful in his quiet title claim and the dispute between Deichert and Fitch proceeded to trial.

Apparently there was some concern by the district court regarding the appropriate remedy which Deichert should be able to pursue. The district court, noting that Deichert was "casting about for a remedy" initially explained that no remedy seemed appropriate. The district court noted rescission was impractical because Deichert had sold part of the property he bought from Fitch. Reformation was not possible, the court noted, because Fitch did not own the disputed tract which the parties contemplated conveying. Moreover, the court stated the Parol Evidence Rule prohibited Fitch from varying the terms of the written agreement.

After further discussion the district court formulated a remedy as follows:

"Since the property cannot be reconveyed and the contract cannot be reformed, the only alternative is to determine the fair market value of the land actually owned and conveyed by the defendant at the time of the contract for deed. Doing this does not involve enforcement of an invalid oral contract for the sale of a larger piece of real estate. Neither does it involve changing by oral testimony, and the enforcing thereafter, of a different agreement from that reflected in the documentation. It does, however, give effect to the transaction as it actually occurred.

"Consequently, the plaintiff is entitled to recover the excess amount paid."

The district court presented to counsel the following jury instruction to govern the trial: "(1) Does the greater weight of the

---

1. Mistake of fact is defined by statute. *See* § 9–03–13, N.D.C.C.

evidence establish that the fair market value of the property actually conveyed at the time of the agreed sale was less than $125,000?"

■ In this case Deichert was given an opportunity to review the court's proposed instruction, apparently pursuant to Rule 51(c), N.D.R.Civ.P.[2] At a conference in chambers on the morning of the trial counsel for Deichert stated he had no objections to the jury instructions. A few moments later counsel for Deichert stated: "I am satisfied with the jury form in the proposed jury instructions." This instruction thus became the law of the case. As we said in *Grzadzielewski v. Walsh County Mutual Insurance Co.*, 297 N.W.2d 780, 781 (N.D. 1980) "[w]hen the [jury] instructions are not objected to, they become the law of the case and any objections to them are waived." *See also, Fetzer Electric, Inc. v. Develco, Inc.*, 321 N.W.2d 521, 523 (N.D. 1982); *Chicago, M., St. P. & P.R. Co. v. Johnston's Fuel Liners, Inc.*, 122 N.W.2d 140, 147 (N.D.1963). Accordingly, we will view the correctness of the district court's decision to grant a directed verdict in light of the established law of the case.

Evidence of the value of the property actually conveyed consisted of Deichert's testimony, his wife's testimony, and several exhibits which illustrated the size and location of the disputed tract of land. After Deichert rested his case, counsel for Fitch requested a meeting in chambers wherein he made a motion for a directed verdict.

The court responded to Fitch's motion for a directed verdict as follows:

"[T]he very first question the jury is going to be asked to answer is: Does the greater weight of the evidence establish the fair market value of the property actually conveyed was less than 125 thousand dollars at the time the contract for deed was signed?

"As I understand what your client [Deichert] is saying, it is: No, it wasn't, it was worth more than that."

After further discussion with counsel, Fitch's motion was granted and the jury was dismissed.

We set forth the standard to be used in disposing of motions for a directed verdict pursuant to Rule 50(a), N.D.R.Civ.P., in *Knoff v. American Crystal Sugar Co.*, 380 N.W.2d 313, 318 (N.D.1986):

"A motion for a directed verdict should not be granted unless the moving party is entitled to a judgment as a matter of law. In making its determination on the motion, the court must view the evidence in the light most favorable to the party against whom the motion is made. A mere scintilla of evidence in favor of the opposing party does not preclude the granting of the motion. The ultimate question is whether there is evidence upon which the jury could properly find a verdict for the party against whom the motion is made. A directed verdict is granted as a matter of law and is fully reviewable on appeal."

*See also, McCarney v. Knudsen*, 342 N.W. 2d 380, 382 (N.D.1983); *Askew v. Joachim Memorial Home*, 234 N.W.2d 226, 240 (N.D.1975). Notwithstanding the district court's duty to view the evidence in a light most favorable to Deichert, we believe the district court properly granted a directed verdict in favor of Fitch.

■ Direct evidence of the value of the land was offered by Deichert's testimony.

2. Rule 51(c), N.D.R.Civ.P., reads:

"(c) *Exceptions to Instructions.* The giving of instructions and the failure to instruct the jurors shall be deemed excepted to unless the court, before instructing the jurors, shall submit to counsel the written instructions which it proposes to give to the jurors and shall ask for exceptions to be noted, and thereupon counsel must designate such parts or omissions of such instructions as he may deem objectionable. Thereafter, only the parts or omissions so designated shall be excepted to by the counsel designating the same. All proceedings connected with the taking of such exceptions shall be in the absence of the jurors and a reasonably sufficient time shall be allowed counsel to take such exceptions and to note the same in the record of the proceedings."

On direct examination Deichert testified: "In my opinion, as far as selling that riverfront property, the 4.6 acres, we thought, was worth that 125 thousand dollars." It is undisputed that Fitch actually conveyed 4.65 acres.

Later during direct examination Deichert was asked to place a value on the property. He said there were "roughly, four acres" which was worth "roughly, 30 thousand dollars an acre." In addition, Deichert testified that the house was worth 25 thousand dollars. Thus, Deichert not only testified that what he received was worth $125,000, but also that it was "roughly" worth $145,000.

On cross-examination Deichert was asked whether or not he looked for other riverside property before purchasing Fitch's property. Deichert said he looked at other lots which were approximately one acre in size and selling for $30,000. Deichert testified that the Fitch property was "better" than the $30,000 lots. Later on cross-examination Deichert responded to questions as follows:

"Q. Did you think that the Fitch property, as you saw it in 1982, had a value of 30 thousand dollars an acre?

"A. Yes, I did.

"Q. And this morning you testified as to the dollar value you attribute to the house itself. What was your figure, again?

"A. 20 or 25 thousand maximum.

"Q. Mr. Deichert, if you acquired or received four acres of land from Mr. Fitch, and you felt that figure of 30 thousand dollars per acre was a fair figure, and your house was worth 25 thousand dollars, didn't you receive the benefit of the bargain?

"A. No, I didn't, because I wouldn't have bought that property if the property line would have been twenty feet from my window. There would be no purpose for me to move out in the country. I would have stayed in my condo.

"Q. You stated, though, you felt the value of the property per acre was 30 thousand dollars. Isn't that a fair statement? Didn't you say that?

"A. Yes, I did.

"Q. Didn't you testify that you received from Mr. Fitch at least four acres of land?

"A. Yes, I did.

"Q. That adds up to 120 thousand dollars; is that correct?

"A. Yes, it does.

"Q. And if you add on the value of the home itself, 25 thousand dollars, doesn't that exceed what you paid for the property?

"A. Not really.

"Q. Well, will you add up those numbers and—

"A. I know what it comes to. Can I expound on that.

"Q. Well, I want you to answer the question.

"A. Okay. Say the question again.

"Q. You felt the property per acre was worth 30 thousand dollars?

"A. Yes.

"Q. Mr. Fitch did in fact give you four acres of land; is that right?

"A. Yes.

"Q. And you feel that the value of the home, sitting there as improved, in your opinion, was worth 25 thousand dollars?

"A. Before the improvements or after the improvements?

"Q. Before the improvements.

"A. Yes.

"Q. Do these figures total up to more than 125 thousand dollars?

"A. Yes, they do.

"MR. JAMES RAUSCH: I have no further questions."

It seems clear from this testimony that Deichert believed he received $125,000 worth of property but that he personally would not have purchased the tract had he known the true property line was approximately twenty feet from the house. Deic-

hert's personal preference, however, was not an element of the court's formulation of the remedy and law of the case.

On redirect examination Deichert said that he believed the house had a "maximum" value of $25,000. When asked about the value of the real estate without the house Deichert responded: "It's got to be *at least* a hundred thousand [dollars]." [Emphasis added.] This testimony does not assist Deichert's case. To say the land is worth "at least" $100,000 does not affirmatively establish that the land and house are worth less than $125,000 as the law of the case required Deichert to prove. On two other occasions during redirect examination Deichert's counsel asked Deichert if he placed a *minimum* value of $100,000 on the land apart from the house. Deichert responded yes to both questions.

Plaintiff's wife, Linda Deichert, testified that she was not involved in the negotiations for the sale of the property. She further testified, however, that she agreed with her husband's valuation of the land and house and that the land was worth $30,000 an acre.

Our analysis of the evidence discloses that it is undisputed that the house had a value of between $20,000 and $25,000; that Deichert testified more than once that the land was worth $30,000 an acre; that Deichert actually received 4.65 acres; and that Deichert also testified that the land he looked at was worth "at least" $100,000. None of this testimony would justify a conclusion by the jury that the property received had a value of less than $125,000.

Under the law of the case Deichert had the burden of proving by the greater weight of the evidence that the value of the property he received was less than $125,-000. We agree with the trial court that the evidence cannot support that conclusion as a matter of law. The test for granting a motion for a directed verdict is not whether there is no evidence supporting the party against whom the motion is directed but whether or not there is evidence upon which the jury could properly find a verdict for that party. *McCarney v. Knudsen, supra,* at 382.

Deichert failed to present any direct evidence that the 4.65 acres he received was worth less than $125,000 and the district court properly granted Fitch's motion for a directed verdict. Accordingly, the judgment dismissing Deichert's complaint is affirmed.[3]

GIERKE, MESCHKE and LEVINE, JJ., concur.

VERNON R. PEDERSON, Surrogate Justice, sitting in place of VANDE WALLE, J., disqualified.

VERNON R. PEDERSON, Surrogate Justice, concurring specially.

Lest anyone conclude from the majority opinion that this court believes that the trial court formulated a correct remedy for Deichert, I wish to point out that the proper remedy for a buyer against a seller who fails to convey all that was agreed upon, and there is no fault on the part of the buyer, is the value of the part not conveyed.

---

3. At one point on redirect examination Linda Deichert testified that the actual value of the entire tract which her husband looked at was worth $125,000. This conceivably creates an inference that the land actually conveyed is worth less than $125,000. However, in light of Linda Deichert's testimony that she did not participate in the negotiations and that she agreed with her husband's testimony regarding valuations of the property, her statement is hardly enough to overcome her husband's testimony. A mere scintilla of evidence does not preclude the granting of a motion for directed verdict. *Knoff, supra* at 318; *Askew, supra* at 240.