Dale S. OANES and Catherine Oanes,
Plaintiffs and Appellants,

v.

WESTGO, INC.; Rust Sales; Westfield
Manufacturing Company, Defendants
and Appellees.

Civ. No. 900366.

Supreme Court of North Dakota.

Oct. 11, 1991.

As Amended Oct. 23, 1991.

Gjevre, McLarnan, Hannaher, Vaa, Skatvold & McLarnan, Moorhead, Minn., for plaintiffs and appellants; argued by Galen J. Vaa.

Nilles, Hansen & Davies, Ltd., Fargo, for defendant and appellee Westgo, Inc.; argued by Stephen W. Plambeck.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for defendants and appellees Rust Sales and Westfield Mfg. Co.; argued by C. Nicholas Vogel.

Duane A. Lillehaug & J.P. Dosland of Dosland, Dosland, Nordhougen, Lillehaug

& Johnson, P.A., Moorhead, Minn., for amicus curiae, N.D. Trial Lawyers. Brief filed.

GIERKE, Justice.

Dale and Catherine Oanes appeal from a judgment entered upon a jury verdict dismissing their products liability action against Westfield Industries, Ltd. [Westfield]; Westgo, Inc. [Westgo]; and Rust Sales [Rust]. They also appeal from an order denying their motion for a new trial. We vacate and remand.

Westfield is in the business of manufacturing portable farm augers. From about 1950 to 1974, Westfield manufactured "drag-out" augers as an attachment to its portable farm augers. The drag-out augers were designed to eliminate shoveling grain to the intake end of the portable auger. Westfield attached their drag-out augers to a 1¼ inch extension protruding from the drive shaft of their portable farm augers with a universal joint and a woodruff key and screw. In 1974 Westfield quit manufacturing its drag-out augers. At about the same time Westfield began designing and marketing a swingway hopper as an attachment for its portable farm augers. The drive mechanism for the swingway hopper attached to the 1¼ inch extension protruding from the drive shaft of the portable auger.

In the late 1970s, Westfield designed a W80 portable farm auger. The W80 initially had a 1¼ inch extension to attach the swingway hopper option. In the early 1980s Westfield stopped manufacturing the swingway hopper option and also shortened the protruding stub shaft to ½ inch. Westfield manufactured the W80 involved in this action in 1980 and delivered it to Westgo, a distributor, who assembled the auger and sold it to Rust, a retailer. Consequently the W80 involved in this case was manufactured with a 1¼ inch extension protruding from the drive shaft to accommodate the swingway hopper attachment.

Dale's employer, Westway Trading Corporation [Westway], purchased the W80 from Rust in 1981. About one year later, Westway employees constructed their own drag-out auger to attach to the 1¼ inch extension at the intake end of the W80. The drag-out auger was made from about 14 feet of unshielded screw-type flighting with a T-handle attached to one end. The other end of the drag-out auger was attached to the 1¼ inch protruding stub shaft with a universal joint and a woodruff key. However, the drag-out auger and universal joint kept slipping off of the stub shaft, and the Westway employees drilled a hole in the stub shaft so that the drag-out auger and universal joint could be attached to the W80 with a nut and bolt arrangement. The original stub shaft subsequently broke, and Westway employees replaced it with splicer shafts which extended more than three inches beyond the intake end of the W80. There is nothing in this record to indicate that Dale was involved in Westway's construction of this drag-out auger.

On December 3, 1986, Dale was injured while using the W80 and drag-out auger to remove sunflower pellets from one of Westway's storage bins. A co-employee was outside the bin and activated the electric motor for the W80. The W80 and attached drag-out auger moved suddenly and Dale's right leg came in contact with the unshielded flighting on the drag-out auger. Dale subsequently underwent several operations on his right leg; however, it was amputated above the knee on December 24, 1986.

The Oaneses brought this products liability action against Westgo, Rust, and Westfield,[1] alleging that they negligently designed, manufactured and sold the W80. The Oaneses essentially contended that the defendants negligently designed the W80 and negligently failed to provide adequate warnings about the dangers of attaching a drag-out auger to the W80. The Oaneses also alleged that the defendants were strictly liable in tort because they designed, manufactured, and sold the W80 in a defec-

---

1. The Oaneses were precluded from suing Dale's employer, Westway, by workers compensation law. Sections 65–01–01 and 65–01–08, N.D.C.C.

*Westman v. Dessellier,* 459 N.W.2d 545 (N.D.1990).

tive and unreasonably dangerous condition. The Oaneses essentially contended the W80 was defective because of its design and because it lacked adequate warnings. The defendants answered, denying liability and alleging that Dale's injuries were caused by the misuse of the W80. Westfield alleged that Section 28–01.1–04, N.D.C.C., barred recovery because the W80 was altered or modified subsequent to its manufacture and sale.

After the Oaneses presented their case-in-chief, the trial court granted Rust's motion for directed verdict on the Oaneses' negligence claim against it. Thereafter, the jury returned a special verdict finding that, after the W80 was sold to Westway, it was altered or modified "in such a manner as to change the purpose, use, function, design, or intended use or manner of use ... from that which was originally designed, tested or intended" and that the alteration or modification was a substantial contributing cause of Dale's injuries. The jury found that Westfield and Westgo were not negligent and that the W80 was not defective and unreasonably dangerous when it left the possession of Westfield. Finally, the jury found that Dale and his employer, Westway, were both negligent but that Westway's negligence was the proximate cause of Dale's injuries. The Oaneses moved for a new trial, and the trial court denied their motion. The Oaneses have appealed from the judgment and from the order denying their motion for a new trial.

The Oaneses primarily contend that the trial court failed to correctly instruct the jury on the applicable law. In *Kaufman v. Meditec, Inc.*, 353 N.W.2d 297, 301 (N.D.1984), we outlined our well established standard for reviewing jury instructions:

"The instructions must fairly inform the jury of the law that must be applied. On appeal, however, jury instructions must be reviewed as a whole and, if they correctly advise the jury as to the law, they are sufficient although parts of them standing alone may be erroneous and insufficient."

Under that standard, we examine the Oaneses' arguments. Relying on *Witthauer v. Burkhart Roentgen, Inc.*, 467 N.W.2d 439 (N.D.1991), they contend that the trial court committed reversible error by instructing the jury on alterations or modifications of the W80 based on Section 28–01.1–04, N.D.C.C.[2] We agree.

In *Witthauer*, a surgical lamp had been accidentally damaged and employees at a clinic had removed the lamp's lower housing which, unknown to them, served as a heat protection filter. An infant was severely burned by the lamp during surgery, and her parents sued the clinic. The clinic brought a third-party action against the distributor who argued that the trial court erred in refusing to instruct the jury that Section 28–01.1–04, N.D.C.C., provided it with an absolute defense to the action because the clinic had modified or altered the lamp.

For purposes of our decision, we assumed that the clinic's act of accidentally damaging the lamp constituted an "alteration or modification" of the product under Section 28–01.1–04, N.D.C.C. We said:

"[The distributor's] liability was premised on its negligent failure to warn that the lower housing of the lamp contained a heat-protection filter, and that without the filter in place, the temperature at the focus of the lamp would reach harmful levels. Under [the distributor's] interpretation, because of [the] Clinic's use of the lamp without the lower housing, the statute would shield it from any liability

2. Section 28–01.1–04, N.D.C.C., provides:
"*Alteration or modification of product is defense to action.* No manufacturer or seller of a product shall be held liable for any injury, death, or damage to property sustained as a result of an alleged defect, failure to warn or protect, or failure to properly instruct in the use or misuse of that product, where a substantial contributing cause of the injury, death, or damage to property was an alteration or modification of the product, which occurred subsequent to the sale by the manufacturer or seller to the initial user or consumer, and which changed the purpose, use, function, design, or intended use or manner of use of the product from that for which the product was originally designed, tested, or intended."

whatsoever for negligently failing to warn of the dangers resulting from a foreseeable alteration or modification of the lamp. We will not assume that the Legislature intended a result so unjust and a result which appears contrary to prevailing doctrine.... We conclude that § 28–01.1–04 does not preclude a seller's liability when it is premised on the negligent failure to provide adequate warnings of the dangerous consequences resulting from a foreseeable alteration or modification of a product." *Witthauer, supra*, 467 N.W.2d at 445 [Citations omitted].

■■ Although the defendants argue that *Witthauer* is distinguishable because that case involved an accidental and not an intentional modification of the product, our decision assumed that the change in the lamp constituted an "alteration or modification" under Section 28–01.1–04, N.D.C.C. It was therefore immaterial that the alteration or modification of the lamp was accidental. Under Section 28–01.1–04, N.D.C.C., and *Witthauer*, a manufacturer or seller may be liable for alterations or modifications of a product that are foreseeable, regardless of whether the change is intentional or the result of an accident. Moreover, contrary to the defendants' as-

sertion, we were aware of the legislative history of Section 28–01.1–04, N.D.C.C., when we decided *Witthauer*, and we construed that statute so as not to preclude liability if there is a foreseeable alteration or modification of a product. Under *Witthauer*, we conclude that the trial court erred in instructing the jury on alteration or modification without regard to foreseeability.[3] The court's instructions did not correctly advise the jury as to the law. Because that issue is interrelated with both the negligence and strict liability claims by the Oaneses, we conclude that they are entitled to a new trial on those claims.[4]

The Oaneses have raised additional issues regarding jury instructions. Because these issues may arise on retrial, and in the interests of judicial economy, we add the following comments. *See Kaufman v. Meditec, Inc., supra.*

The Oaneses contend that the trial court erred in instructing the jury that, in order to find liability based on negligent design, the jury had to find that the W80 was defective and unreasonably dangerous.[5] They assert that the trial court's instruction erroneously combined elements of strict liability and negligence. We disagree.

**3.** We observe that *Witthauer* was decided after the trial in this action.

**4.** Because we conclude that Section 28–01.1–04, N.D.C.C., does not preclude liability for foreseeable alterations or modifications, we need not consider the Oaneses' argument that, if that statute provides a complete bar to recovery, it violates Article I, § 21, N.D. Const. *Compare Kavadas v. Lorenzen*, 448 N.W.2d 219 (N.D.1989), and *Hanson v. Williams County*, 389 N.W.2d 319 (N.D.1986).

**5.** The trial court gave the following instruction regarding the Oaneses' negligent design claim:
"The manufacturer of a product has a duty to use reasonable care in its design to make the product reasonably safe for the purposes for which it is intended to be used. The manufacturer is under no duty to design the safest possible product, or one as safe as others make, or a safer product than the one designed, so long as the design adopted is reasonably safe. In other words, the manufacturer is under no duty to design the product so as to render it wholly incapable of producing an injury; nor is he required to

adopt features representing the ultimate in safety. It is one thing to show that a safer product might have been designed; quite another to show that the product as designed was unreasonably dangerous.
"There have been allegations in this case concerning the absence of alleged safety devices. The reasonableness of a manufacturer's failure to provide such devices must be judged by a standard of reasonably safe design, not safest possible design. The manufacturer of a product is not an insurer of the safety of the persons using that product; nor is he under any duty to manufacture a product which is absolutely free from all possible harm to every individual.
"In order for a Defendant to be found liable for a defective design, Plaintiffs must prove by the greater weight of the evidence that the *Defendant failed to use reasonable care in its design and that such failure resulted in a defective condition which was unreasonably dangerous to Plaintiff* and that such condition was a proximate cause, as the term proximate cause is defined in these instructions, of Plaintiff's injury." [Emphasis added].

■ We have recognized that negligence and strict liability in tort are separate and distinct theories of products liability and that each theory has a different focus. *Butz v. Werner*, 438 N.W.2d 509 (N.D.1989); *Mauch v. Manufacturers Sales and Service, Inc.*, 345 N.W.2d 338 (N.D.1984); *Day v. General Motors Corp.*, 345 N.W.2d 349 (N.D.1984). Strict liability in tort focuses on whether or not a product is defective and unreasonably dangerous. *Butz, supra*; *Mauch, supra*. Negligence focuses on whether or not the conduct of the manufacturer or seller falls below the standard of reasonable care. *Mauch, supra*. The essential difference between negligence and strict liability is that in negligence the foreseeability of harm by the manufacturer or seller is a question of fact for the jury while in strict liability knowledge of the product's propensity to inflict harm is assumed regardless of whether the danger was foreseeable by the manufacturer or seller. *Mauch, supra*; *Newman v. Utility Trailer & Equipment Co., Inc.*, 278 Or. 395, 564 P.2d 674 (1977). *See* 63 Am.Jur.2d, *Products Liability* § 364 (1984).

■ In negligent design claims it is well established that a manufacturer or seller is not liable in the absence of proof that a product is defective. *United States Rubber Co. v. Bauer*, 319 F.2d 463 (8th Cir.1963) [applying North Dakota law]; *Shramek v. General Motors Corp.*, 69 Ill. App.2d 72, 216 N.E.2d 244 (1966); *see* Prosser & Keeton on Torts, § 96(1) (5th Ed. 1984); 63 Am.Jur.2d, *Products Liability* § 224 (1984); 1A Frumer & Friedman, Products Liability, § 3.01[1] (1991). Thus, an element of a negligent design case is that the product is defective or unsafe. In this case the trial court's instruction on negligent design essentially required the Oaneses to prove that the defendants failed to use reasonable care in designing the

W80 and that that failure resulted in a defective product. The trial court's instruction was a correct statement of the law.[6]

The Oaneses also contend that the trial court erred in instructing the jury that, under strict liability, a duty to warn arises only if the fact that "the product would be considered defective and unreasonably dangerous in the absence of such a warning *is or should be known* to the manufacturer or seller." [Emphasis added]. The Oaneses contend that that instruction improperly injected negligence principles into their strict liability claim.

■ In a strict liability failure-to-warn case, the focus is on whether the warnings, if any, which accompany a product are adequate so that the product is not unreasonably dangerous to the ordinary user. *Mauch, supra*. The focus is not on the knowledge or reasonableness of the conduct of the manufacturer or seller. *Mauch, supra*; *Jackson v. Coast Paint and Lacquer Co.*, 499 F.2d 809 (9th Cir. 1974); *see* 1A Frumer & Friedman, *supra*, at § 3.03[4]. It has generally been held that instructions on duty to warn under strict liability are erroneous if they inject negligence principles. *Brown v. Caterpillar Tractor Co.*, 741 F.2d 656 (3rd Cir. 1984); *Jackson v. Coast Paint and Lacquer Co., supra*; *Patricia R. v. Sullivan*, 631 P.2d 91 (Alaska 1981). We agree with the Oaneses that the trial court's instruction, standing alone, injected negligence concepts about the manufacturer's knowledge into the strict liability failure-to-warn claim.[7]

■ The Oaneses also contend that the trial court's instruction on misuse of the product was erroneous because it created a mistaken impression that unforeseeable

---

6. The Oaneses' negligence claim was based on two theories—negligent design and negligent failure to warn. The interrogatories in the special verdict asked the jury whether the defendants were negligent without distinguishing between those two separate theories. In these situations, it is advisable to have the jury separately decide each theory.

7. Because we have reversed and remanded for a new trial on another issue, we express no opinion on whether the trial court's other instructions cured this, or any other instruction which, standing alone, was erroneous.

misuse of the product was a total defense to their action.[8]

In *Mauch, supra,* we recognized that the defense of unforeseeable misuse reduced the liability of a manufacturer or seller where the plaintiff misuses the product in a manner in which the manufacturer or seller could not be expected to anticipate and the misuse is a proximate cause of the damages sustained. We said:

"When the defenses of assumption of risk and unforeseeable misuse are raised in the context of a strict products-liability action, the trier of fact must determine, on a pure comparative-causation basis, the percent of the injuries proximately caused by the assumption of risk or the unforeseeable misuse and the percent proximately caused by the unreasonably dangerous defect in the product, and the plaintiff's recovery must be reduced by an amount proportionate to the damage caused by the misuse or assumption of risk." *Mauch, supra,* 345 N.W.2d at 348–349.

In this case the jury did not have to allocate the percent of injuries proximately caused by unforeseeable misuse because, under the special verdict form, the jury found that the W80 was not defective and unreasonably dangerous when it left the possession of Westfield. Nevertheless, the issue may be relevant on retrial, and the trial court's instruction on misuse, standing alone, could have created a mistaken impression about the applicability of that defense.

The Oaneses also argue that the trial court erred in instructing the jury on duty to warn under both strict liability and negligence. They assert that the instructions [9] essentially provided that a manufacturer or seller has no duty to warn if the danger is obvious, known, or readily discoverable.

In *Butz v. Werner, supra,* we observed that obviousness of danger does not preclude liability in strict liability in tort and said that obviousness of danger is merely one factor to consider in determining whether a product is unreasonably dangerous. *See Olson v. A.W. Chesterton Co.,* 256 N.W.2d 530 (N.D.1977). Although we sustained a summary judgment dismissal of a strict liability and a negligence

8. That instruction provided:

"Unless a product is used in a manner which is reasonably foreseeable to the manufacturer or seller, taking into consideration its intended use and the instructions for such use, the manufacturer or seller cannot be held strictly liable. *Accordingly, if you find that the product was misused by the Plaintiff, and that such misuse was not reasonably foreseeable to a Defendant, that Defendant cannot be found liable to Plaintiffs.* The mere fact that a product can be used in a manner other than that in which it is intended to be used, does not render the product defective or unreasonably dangerous. However reasonably foreseeable, misuse is not a defense." [Emphasis added].

9. The strict liability instruction provided:

"A duty to warn of dangers inherent in the use of a product arises only if:

\* \* \* \* \* \*

"(3) The danger to be warned of is not one that is obvious or known to or readily discoverable by *a person who might reasonably* be expected to use the product, and is not a danger which arises only because the product is put to some unexpected use."

The negligence instruction provided:

"A manufacturer of a product has a duty to give a reasonable warning as to dangers inherent or reasonably foreseeable in using the product in the manner specified. This duty applies even though the product may not be used in its specified manner, so long as such use is one that the manufacturer should reasonably foresee.

"A duty to warn of any danger exists only when the person to whom the warning would be given can reasonably be assumed to be ignorant of the facts or danger which a warning would communicate. In other words, there is no duty to give a warning as to a matter of which a person already has knowledge or of which a reasonable person under the same or similar circumstances would be expected to have knowledge. Where the danger or potential for danger is known or should be known, the law imposes no duty to warn.

"The law considers a danger to be obvious if a reasonably prudent person in the exercise of due care would become aware of the danger from an examination of the surrounding conditions. Accordingly, if you find that a reasonably prudent person in the exercise of due care would have realized from an examination of the surrounding conditions that there was a danger, the law imposes no duty to anyone to warn of that danger."

action under failure to warn theories in *Morrison v. Grand Forks Housing Authority*, 436 N.W.2d 221 (N.D.1989), we continued to recognize that issues about the interrelationship of obviousness of danger and adequacy of warnings are generally factual questions unless the facts are such that reasonable persons could not disagree. In *Morrison* we concluded that reasonable persons could not disagree on the obviousness of danger and the need for a warning. In this case reasonable persons could disagree about the obviousness of the danger and the adequacy of the warnings. We agree with the Oaneses that the trial court's instructions erroneously provided that a manufacturer has no duty to warn if the danger is obvious, known, or readily discoverable. The instructions essentially removed that issue from the jury.

The Oaneses also contend that the trial court erred in granting a directed verdict on their negligence claim against Rust.

■■■■ A motion for directed verdict should not be granted unless the moving party is entitled to judgment as a matter of law. *Deichert v. Fitch*, 424 N.W.2d 903 (N.D.1988). In considering a motion for a directed verdict, the trial court must consider the evidence in the light most favorable to the party against whom the motion is made. *Id.* A motion for directed verdict should rarely be granted, especially in negligence cases. *Ganzer v. Woodbury*, 427 N.W.2d 353 (N.D.1988).

■■■■ The Oaneses' negligence claim against Rust was premised upon allegations that it failed to exercise reasonable care when it sold the W80 to Westway without a warning that a drag-out auger should not be attached to the protruding stub shaft. A supplier of chattels generally has a duty to warn of dangerous propensities of the chattel which are or should be known to the supplier. *Barsness v. General Diesel & Equipment Co.*, 383 N.W.2d 840 (N.D.1986). Issues about whether the supplier breached that duty generally involve determinations of fact. *Id.* We conclude that there was evidence, viewed in the light most favorable to the Oaneses, from which a jury could decide that Rust was negligent in selling the W80 to Westway without an adequate warning. We therefore conclude that the trial court improperly granted a directed verdict in favor of Rust.

■■■■ The Oaneses finally contend that the trial court committed prejudicial error by excluding their proffered exhibits which advertised the drag-out augers that Westfield had manufactured until 1974. The trial court concluded that the exhibits would be confusing to the jury and were only marginally relevant and sustained the defendants' objections under Rule 403, N.D.R.Evid. In view of the evidence presented in this case, we cannot say that the trial court abused its discretion in refusing to admit those exhibits under Rule 403, N.D.R.Evid. *Williams County Social Services Board v. Falcon*, 367 N.W.2d 170 (N.D.1985).

In accordance with this opinion, the judgment and the order denying a new trial are vacated and the case is remanded for a new trial.

ERICKSTAD, C.J., and VANDE WALLE, J., concur.

DOUGLAS B. HEEN, Surrogate Judge, sitting in place of LEVINE, J., disqualified.

MESCHKE, Justice, concurring and dissenting.

I concur that a new trial is necessary because the trial court erred in instructing the jury on an alteration without regard to foreseeability. Hesitantly, I also agree that the trial court's instruction on misuse was mistaken, and that the trial court improperly granted a directed verdict for Rust. However, I dissent from the conclusion that the trial court's instructions improperly injected negligence concepts into the strict liability failure-to-warn claim.

The complications brought about by dual-theory cases like this one demonstrate that

we should merge strict liability and negligence, as Justice Levine explained in her dissenting opinion to *Butz v. Werner*, 438 N.W.2d 509 (N.D.1989). I joined that opinion and I continue to subscribe to its thesis. Altogether, today's majority opinion vividly illustrates the need to combine and simplify strict liability and negligence doctrine for submission to a jury.

DOUGLAS B. HEEN, Surrogate Judge, concurs.